UNITED STATES, Plaintiff,

v.

**Lee A. LIMBS, Jr., et al., Defendants.**

**Civ. No. 72-307.**

United States District Court,
D. Arizona.

March 8, 1973.

William C. Smitherman, U. S. Atty.,
Joseph R. Keilp, Asst. U. S. Atty.,
Phoenix, Ariz., and Leavenworth Colby,
Special Asst. Atty. Gen., U. S. Dept. of
Justice, Washington, D. C., for plain-
tiff.

Karl N. Stewart, in pro. per., and
Lawrence J. Marks, of Kanne & Bickart,
Phoenix, Ariz., for defendants.

OPINION AND ORDER DENYING
 PLAINTIFF'S MOTION FOR
 SUMMARY JUDGMENT AND
 GRANTING DEFENDANTS' MO-
 TIONS FOR SUMMARY JUDG-
 MENT

HAUK,* District Judge.

These cross motions for summary
judgment on the Complaint came on for

---

* United States District Judge, Central Dis-
trict of California, sitting by Designation
of Ninth Circuit Chief Judge Richard H.

Chambers as District Judge for the Dis-
trict of Arizona.

hearing in Phoenix, Arizona, on Saturday, February 3, 1973. The Counterclaim of the Limbs was not argued for the reasons we later recite.

The facts are not in dispute. The parties stipulated to them in a statement filed on September 15, 1972, which recites the following incidents:

The defendants, Lee A. Limbs, Sr., and Lee A. Limbs, Jr., were a Deputy U. S. Marshal and a guard and are employees of the United States Department of Justice. Karl N. Stewart has been their attorney. On Sunday, May 2, 1965, the two Limbs were involved in an automobile accident at a point two miles east of Cunningham, Kansas. Both individuals were performing their official duties at the time of the accident, and so they filed claims for compensation under the Federal Employees Compensation Act, 5 U.S.C. § 8101 et seq. (1966), formerly 5 U.S.C. § 751 et seq. (1964). The San Francisco District Office of the Bureau of Employees' Compensation, United States Department of Labor, received the Limbs' applications on June 18, 1965. The Bureau approved Limbs, Sr.'s claim on July 19, 1965, and approval for Limbs, Jr., followed on August 11.

Meanwhile Mr. Limbs, Sr., and Mr. Limbs, Jr., retained one Karl N. Stewart of Phoenix as their attorney to prosecute their claim against the driver of the car that hit them in Kansas. Stewart did not try to conceal his employment, and on March 25, 1966, he wrote a letter to the Solicitor of the United States Department of Labor confirming his participation in the case. (See Appendix A).

The Solicitor replied to Stewart one month later (Appendix B). In his letter he referred to two certain provisions of the Federal Employees Compensation Act, 5 U.S.C. §§ 8131 and 8132,[1] promised to send a current statement of disbursements made to the Limbs', and then asked Mr. Stewart to "keep us advised of the status of the cases from time to time and . . . notify us before distributing the proceeds of any third party recovery or settlement."

1. § 8131. Subrogation of the United States
(a) If an injury or death for which compensation is payable under this subchapter is caused under circumstances creating a legal liability on a person other than the United States to pay damages, the Secretary of Labor may require the beneficiary to—
(1) assign to the United States any right of action he may have to enforce the liability or any right he may have to share in money or other property received in satisfaction of that liability; or
(2) prosecute the action in his own name.
An employee required to appear as a party or witness in the prosecution of such an action is in an active duty status while so engaged.
(b) A beneficiary who refuses to assign or prosecute an action in his own name when required by the Secretary is not entitled to compensation under this subchapter.
§ 8132. Adjustment after recovery from a third person
If an injury or death for which compensation is payable under this subchapter is caused under circumstances creating a legal liability in a person other than the United States to pay damages, and a beneficiary entitled to compensation from the United States for that injury or death receives money or other property in satisfaction of that liability as a result of suit or settlement by him or in his behalf, the beneficiary, after deducting therefrom the costs of suit and a reasonable attorney's fee, *shall refund to* the United States the amount of compensation paid by the United States and credit any surplus on future payments of compensation payable to him for the same injury. The amount refunded to the United States shall be credited to the Employees' Compensation Fund. If compensation has not been paid to the beneficiary, he shall credit the money or property on compensation payable to him by the United States for the same injury. However, the beneficiary is entitled to retain at least one-fifth of the net amount of the money or other property remaining after the expenses of a suit or settlement have been deducted, plus an amount equivalent to a reasonable attorney's fee proportionate to the refund to the United States. Pub.L. 89–554, Sept. 6, 1966, 80 Stat. 547; Pub.L. 90–83, § 1 (61), Sept. 11, 1967, 81 Stat. 211. [Emphasis supplied]

The Bureau did supply Mr. Stewart with itemized disbursement figures in two letters dated June 10, 1966 (Appendices C & D).

Although the Bureau of Employees' Compensation alluded to the Employees' Compensation Act in their first letter to Stewart, the stipulated facts show that the United States never "required" either Defendant to "assign" to the government their respective rights of action, or any part thereof, nor did the United States "require" either Mr. Limbs, Sr., or Mr. Limbs, Jr., to "prosecute the action in his own name," whether under the Plaintiff's direction or otherwise. And, finally, the United States did not intervene or seek to intervene in the third party tort actions brought by Lee Limbs, Jr., or Lee Limbs, Sr.

Karl Stewart was successful in obtaining a settlement. By May 26, 1966, he received from the State Farm Insurance Company $45,000 for Lee A. Limbs, Jr., and $25,000 for Lee A. Limbs, Sr.[2] The Government admits in the stipulated facts that it had notice of this settlement on December 6, 1966. One day later the Office of the Solicitor, Department of Labor wrote to Stewart, again calling his attention to the Federal Employees Compensation Act and requesting that he reimburse the Bureau of Employees Compensation accordingly (Appendix F). The Bureau provided Stewart with their disbursement figures (Appendices G & H). Before that time, however, Mr. Stewart already had paid over to his clients the settlement proceeds.[3]

Stewart answered the Solicitor's letter of December 27, 1966, by letter and legal memorandum dated January 25, 1967. He flatly refused to reimburse the United States "in that a substantial part of the amount recovered will be used for future medical expenses." "It is clear," he continued, "based upon points and authorities cited in my enclosed memorandum, that the United States does not have a right to recover for compensation and medical expense of either of the above named individuals (Lee A. Limbs., Jr., and Sr.) in this case." (Appendix I).

The Government answered this letter by citing cases in support of its claim (Appendix J). Then in another note, (Appendix K), the Plaintiff noted that with respect to future medical expenses, the Limbs' should not be concerned because their "third party recoveries have not permanently ended [their] rights to benefits from the Bureau of Employees Compensation. From the recoveries which they obtained, a credit is established at the Bureau. This credit is the net amount remaining after the deduction of the attorney's fees and the reimbursement to the Bureau." In separate letters to Mr. Limbs, Jr., and Mr. Limbs, Sr., the Government reiterated its position and offered to continue paying them if only they would reimburse the Bureau (Appendices L & M).

The Limbs' did not repay the Bureau. A little more than five years later, on June 13, 1972, the United States finally filed a complaint in Arizona Federal Court not only against the two Limbs', but against their attorney Karl Stewart for wrongfully having distributed the proceeds which he allegedly knew were owing to the Government. Plaintiff demanded judgment of $6,768.32 against Lee Limbs, Jr.; $6,624.80 against Lee Limbs, Sr.; and $13,393.12 against Stewart. A month later the Defendants answered and counterclaimed for the medical payments which the Bureau had terminated.

Since no factual dispute exists, the Court must confine its consideration solely to the legal significance of the facts set forth above. Specifically, it is the question whether under Rule 56,

---

2. The $45,000 recovery was subject to an attorney fee of $12,000 and costs of $150, leaving a net figure of $32,850. The $25,000 recovery was subject to $100 costs and a $6,500 attorney fee, leaving a net figure of $18,400. See Stipulated Facts Number 9.

3. See Number 12 of the Stipulated Facts for the figures.

F.R.Civ.P., any party in this action is "entitled to a judgment as a matter of law." Before moving into a discussion of the issues generated by this action, we hold that Defendants are entitled to judgment on the main complaint and Plaintiffs are entitled to judgment on the counterclaim. Therefore the Court orders that the motions for summary judgment by the Defendants, and each of them, be granted and that judgment be entered accordingly in favor of Defendants denying to Plaintiff any and all relief sought in the Complaint. By the same token, and by their own stipulations as hereinafter appears, Defendants Limbs' shall take nothing by way of their Counterclaim and that shall also appear in the judgment.

## HAS THE STATUTE OF LIMITATIONS EXPIRED IN THIS ACTION?

The cause of action attempted to be alleged in the Complaint is now over six and a half years stale. More precisely, the United States waited six years and 18 days from the time of the settlement —and five years, six months, and seven days from the time they had notice of the settlement—to commence this lawsuit.

No statute of limitations appears in the Federal Employees' Compensation Act, *supra*. The relevant statute, if any, is the general limitations act, appearing in Title 28 of the United States Code, Section 2415. It provides:

§ 2415. Time for commencing actions brought by the United States

(a) Subject to the provisions of section 2416 of this title, and except as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after

the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later: *Provided,* That in the event of later partial payment or written acknowledgment of debt, the right of action shall be deemed to accrue again at the time of each such payment or acknowledgment.

(b) Subject to the provisions of section 2416 of this title, and except as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency thereof which is founded upon a tort shall be barred unless the complaint is filed within three years after the right of action first accrues: *Provided,* That an action to recover damages resulting from a trespass on lands of the United States, including trust or restricted Indian lands; an action to recover damages resulting from fire to such lands; an action to recover for diversion of money paid under a grant program; and an action for conversion of property of the United States may be brought within six years after the right of action accrues.

A careful reading of this language reveals that if this statute applies to the Employees' Compensation Act, and if the Government's action against the Limbs' and their attorney is founded upon a tort, then the United States cannot recover. Those two conditionals are the most important issues in this case.

FIRST ISSUE:

Does 28 U.S.C. § 2415(b) apply to the Federal Employees' Compensation Act, *supra?*

This question has not been answered by the Judiciary. No decision has been called to the Court's attention. It apparently is a matter of first impression.[4]

4. At the hearing it became apparent that for some reason the Department of Labor often waits a long time before filing claims like this one against the two Limbs'. In light of this practice, it would be quite worthwhile to resolve this issue regarding the Federal statute of limitations.

The only cases that deal with the scope of this Federal 3-year statute of limitations appear in connection with the Medical Care Recovery Act, 42 U.S.C. §§ 2651–2653.[5] United States v. Gera, 409 F.2d 117 (3d Cir. 1969) held that the tort section of 28 U.S.C. § 2415 does apply to actions under the Medical Care

**5. § 2651. Recovery by United States—Conditions; exceptions; persons liable; amount of recovery; subrogation; assignment**

(a) In any case in which the United States is authorized or required by law to furnish hospital, medical, surgical, or dental care and treatment (including prostheses and medical appliances) to a person who is injured or suffers a disease, after the effective date of this Act, under circumstances creating a tort liability upon some third person (other than or in addition to the United States and except employers of seamen treated under the provisions of section 249 of this title) to pay damages therefor, the United States shall have a right to recover from said third person the reasonable value of the care and treatment so furnished or to be furnished and shall, as to this right be subrogated to any right or claim that the injured or diseased person, his guardian, personal representative, estate, dependents, or survivors has against such third person to the extent of the reasonable value of the care and treatment so furnished or to be furnished. The head of the department or agency of the United States furnishing such care or treatment may also require the injured or diseased person, his guardian, personal representative, estate, dependents, or survivors, as appropriate, to assign his claim or cause of action against the third person to the *extent of that right or claim.*

**Enforcement procedure; intervention; joinder of parties; State or Federal court proceedings**

(b) The United States may, to enforce such right, (1) intervene or join in any action or proceeding brought by the injured or diseased person, his guardian, personal representative, estate, dependents or survivors, against the third person who is liable for the injury or disease; or (2) if such action or proceeding is not commenced within six months after the first day in which care and treatment is furnished by the United States in connection with the injury or disease involved, *institute and prosecute legal proceedings* against the third person who is liable for the injury or disease in a State or Federal court, either alone (in its own name or in the name of the injured person, his guardian, personal representative, estate, dependents, or survivors) or in conjunction with the injured or diseased person, his guardian, personal representative, estate, dependents, or survivors.

**Veterans' exception**

(c) The provisions of this section shall not apply with respect to hospital, medical, surgical, or dental care and treatment (including prostheses and medical appliances) furnished by the Veterans' Administration to an eligible veteran for a service-connected disability under the provisions of chapter 17 of Title 38.

**§ 2652. Regulations—Determination and establishment of reasonable value of care and treatment**

(a) The President may prescribe regulations to carry out this chapter, including regulations with respect to the determination and establishment of the reasonable value of the hospital, medical, surgical, or dental care and treatment (including prostheses and medical appliances) furnished or to be furnished.

**Settlement, release and waiver of claims**

(b) To the extent prescribed by regulations under subsection (a) of this section, the head of the department or agency of the United States concerned may (1) compromise, or settle and execute a release of any claim which the United States has by virtue of the right established by section 2651 of this title; or (2) waive any such claim, in whole or in part, for the convenience of the Government, or if he determines that collection would result in undue hardship upon the person who suffered the injury or disease resulting in care or treatment described in section 2651 of this title.

**Damages recoverable for personal injury unaffected**

(c) No action taken by the United States in connection with the rights afforded under this legislation shall operate to deny to the injured person the recovery for that portion of his damage not covered hereunder.

Pub.L. 87–693, § 2, Sept. 25, 1962, 76 Stat. 593.

**§ 2653. Limitation or repeal of other provisions for recovery of hospital and medical care costs**

This chapter does not limit or repeal any other provision of law providing for recovery by the United States of the cost of care and treatment described in section 2651 of this title.

Pub.L. 87–693, § 3, Sept. 25, 1962, 76 Stat. 594.

Recovery Act, and that conclusion was upheld in Forrester v. United States (United States v. Lamarche), 308 F. Supp. 1157 (W.D.Pa.1970):

> "Prior to the enactment of . . . 28 U.S.C. § 2415 . . . the Government was subject to no limitations of time within which it was required to assert a cause of action under the Medical Care Recovery Act. However, there is no question that the Government's present attempt to assert its medical care recovery by intervention herein is subject to the provisions of the relatively new federal statute of limitations, and particularly to subsections (b) and (g) . . . United States v. Gera [*supra*].

> "Subsection (b) provides that in actions founded upon tort, the Government shall be barred from recovery unless complaint is filed within three years after the right of action accrues . . . . The effect . . . was to require the Government to assert its cause of action for medical care rendered prior to July 18, 1966, within three years of that date." Id., at 1158.

Logic dictates that if the Medical Care Recovery Act resembles in wording the Federal Employees' Compensation Act, then the Federal statute of limitations should cover both. Even a casual reading of the two Acts reveals their similarity, if not virtual identity of language. This, considered with the broad scope and intent of 28 U.S.C. § 2415(b), powerfully supports a finding that the statute applies in the case at bar.[6]

Additional support for our decision to apply the scope of the Federal 3-year statute of limitations to the Federal Employees' Compensation Act comes from legislative history. There is no hint anywhere that the act was intended to be limited in its application. In fact its spirit cuts in the opposite direction. Its underlying purpose was noble: to place the Government on a more equal footing with the individual. Before the statute's enactment, private parties had to assert their rights within a prescribed time, while the United States was quite free to wait years before deciding to harass a person for recovery of monies that person had received in a tort award. Rarely has there been anything in Government cases so inherently different from the bulk of private litigation as to justify this double standard. The Senate Judiciary Committee has commented, "Many of the contract and tort claims asserted by the Government are almost indistinguishable from claims made by private individuals against the Government. Therefore it is only right that the law should provide a period of time within which the Government must bring suit on claims just as it now does as to claims of private individuals. The [Senate Judiciary] committee agrees that the equality of treatment in this regard provided by this bill is required by modern standards of fairness and equity."[7]

We agree. When the United States decides to sue one of its citizens, it must turn square corners. If waiting over six years before hauling two injured men into court does not signal Government

---

6. The United States argues that section 2653 of the Medical Care Recovery Act, *supra* n. 5, is a saving clause, retaining the government's right to use a different procedure regarding the Federal Employees' Compensation Act. This should not mean that the Medical Care Act invites its own unique methodology. Were that the case, we would have to conclude that some tort actions brought by the Government are subject to a 3-year limitations period while others are not, depending on which of many statutes the Government cares to use. This is faulty logic, quite unbuttressed by 42 U.S.C. § 2653. The better view would be to extend the Federal 3-year statute of limitations to cover 5 U.S.C. §§ 8131 and 8132, and all other torts, as we believe Congress intended.

7. 1966 U.S.Code Cong. and Admin.News, at 2503. A letter from the Attorney General to the Vice President of the United States restates this point: "Application of statutes of limitation in tort and contract actions would make the position of the Government more nearly equal to that of private litigants." Id. at 2513.

abuse of the Judicial process, it certainly is high-handed and uncalled-for.[8] A truly representative Government agency should not behave this way, and that is one reason why the Federal 3-year statute of limitations sailed through Congress. "Persons dealing with the Government," admonished the Senate Judiciary Committee, "should have some protection against an action by the Government when the act occurred many years previously." [9] To emasculate the statute would be not only unfair, but bad legal practice. This Court cannot imagine why Congress would pass such a broad piece of legislation with the hope that the courts selectively apply it. Even the former Assistant Comptroller General of the United States is on record as saying, "In general [28 U.S.C. § 2415] would bar . . . (2) *every* action which is founded on tort, . . . unless the complaint is filed within three years . . ." [Emphasis supplied].[10]

Another compelling reason underscored Congress' decision to enact the Federal 3-year statute of limitations: to expedite the administration of justice. The Senate Judiciary Committee was quite concerned that Government attorneys were having difficulty litigating outdated claims and that the high cost of storing records was cancelling any financial recoveries secured by the Department of Labor. The Committee recognized "the desirability of encouraging trials at a sufficiently early time so that necessary witnesses and documents are available and memories are still fresh." 1966 U.S.Code Cong. and Admin.News, at 2513. "Stale claims," the Committee said, "can neither be effectively presented nor adjudicated in a manner which is fair to the parties involved. Even if the passage of time does not prejudice the effective presentation of a claim, the mere preservation of records on the assumption that they will be required to substantiate a possible claim or an existing claim increases the cost of keeping records." *Id.*, at 2503. Storage costs should be taken seriously: after a period of years they easily can exceed any return by way of actual collections,[11] especially when the amount prayed for is relatively insignificant, as in this case. Put simply, it is not an intelligent way to handle the taxpayers' money.[12]

 For all of these reasons—legislative intent, statutory construction, and public policy—we conclude that the Federal 3-year statute of limitations applies to the Federal Employees Compensation Act.

---

8. Defendants' counsel mentioned at the hearing that when he and Karl Stewart first studied the Government's complaint, he asked Stewart if the figures were correct. Stewart replied, "My God, it's been so long, I don't know, but it looks right!" Reducing litigation to such guesswork is not the right way to practice law. Rather than cutting corners, the Government should keep to an ethical standard as high, if not higher than, the private bar.

9. 1966 U.C.Code Cong. and Admin.News, at 2508.

10. Letter from Frank H. Weitzel to Hon. Emanuel Celler, Chairman, Committee on the Judiciary, House of Representatives, April 13, 1966, *Id.*, at 2514.

11. *Id.*, at 2513.

12. The Department of Labor is spending $669,778.20 a year to maintain the documents and records they currently use. The volume of the Department's active files in Washington is 68,138 cubic feet; and in their field offices, an additional 51,896 cubic feet. The average cost of storage throughout the United States government is $5.46 per cubic foot per year. This statistic represents just the raw space; support and labor costs raise the figure by 70 cents per cubic foot per year, and when the files are being utilized by attorneys, the price leaps much higher still.
Source: General Services Administration, National Archives and Records Service, Office of Federal Records Centers, Washington D.C., "FY 1972 Estimated Average Cost to Store 1 Cubic Foot of Records in Federal Records Centers Versus Agency Offices".

SECOND ISSUE:

Is the United States' action against the Limbs' and against Mr. Stewart founded upon a tort or upon a contract?

It is difficult to appreciate how anyone could argue that an incident to which 5 U.S.C. §§ 8131 and 8132 apply could be anything but a tort. The sections apply when there is "an injury or death for which compensation is payable." Moreover, the statutes assume the existence of a third party responsible for that injury or death, that is, a tort-feasor who caused the damage. The entire gist of the statutory language indicates that the compensation is for lost time and medical expenses.

The Federal 3-year statute of limitations contains the words "founded upon a tort." § 2415(b), *supra*. This phrase's meaning should not be hard to fathom. It refers to the bottom, or foundation upon which the case rests.[13] That is the plainest meaning, and the one that appears in the statute's legislative history.[14] To insist that this lawsuit is not grounded in a tort is to ask the court to twist logic beyond recognition. The catalytic event was a car accident and the basis of the dispute is funds earmarked for medical expenses. If the Government's attempt to sue for those funds is not "founded in tort," it is a nebulous illusion.

The Government's next argument is that the third-party settlement extinguished the tort action. Thereafter, a new claim appeared, rooted in the "quasi-contractual" language of the Federal Employees' Compensation Act. Its strongest case is United States v. Hayes, 254 F.Supp. 849, 851 (W.D.Ky.1966), where the Court stated, "It is, therefore, clear from the wording of the statute that the defendant in the instant case, upon settlement of his personal injury claim, was obliged to make immediate reimbursement to the United States."

Persuasive as this passage may be, we cannot conclude as a matter of law that it deems all such actions to be founded upon contracts. The *Hayes* court never indicated that that was its intent; that suit was duly commenced within the limitations period applicable to *tort* actions, and the trial judge based his language regarding "obligation" on section 777 of 5 U.S.C. (Now Section 8132, *supra*). That section indicates that an employee *"shall refund"* part of his compensation to the United States. Nothing further exists to support the contention that those two words can turn a suit founded upon a recovery in a personal injury suit into a contract action without a contract. In fact sound case law suggests that we do otherwise. Rather than expand the meaning of the statutory words "founded upon any contract express or implied in law or fact," 28 U.S.C. § 2415(a), *supra*, it is proper to restrict their coverage. In

13. See Wheeler v. Wilkins, 98 Colo. 568, 58 P.2d 1223, 1225 (1936):
"If an action grows out of a tort, it is 'founded upon tort' within the meaning of the statute. Defendant committed a tort when, by false representations, he induced plaintiff to purchase and pay for the stock. That tort gave plaintiff the right to rescind the contract and sue, as she did, in assumpsit for the return of the money she paid. In that manner plaintiff's right of action grew out of the tort, or, as the statute has it, was *founded* upon tort." (Emphasis supplied.)
See also Springhetti v. Hahnewald, 54 Colo. 383, 131 P. 266, 268 (1913):
" 'Founded upon' means the bottom, or foundation, on which something rests

or relies; so that, in speaking of an action founded upon tort, one was meant the basis or foundation of which was a tort."

14. *Supra* note 9, at 2504:
"Subsection (b) of section 2415 provides that tort actions, that is, actions based on damage or injury from a wrongful or negligent act, must be brought by the United States within 3 years after the right of action first accrues. This 3-year statute applies to all Government tort actions except those that are expressly referred to in this subsection and are governed by a 6-yr. statute." (i. e., trespass actions).

United States ex rel Hargis v. Maryland Casualty Company, 64 F.Supp. 522, 527 (S.D.Cal.1946), the Court mentioned,

> "Much speculation has been indulged in by law writers and courts on the distinction between implied contracts in law and implied contracts in fact. Many have insisted that contracts implied in law are, in reality, constructive or quasi contracts. But all the authorities seem to agree that when the words 'implied contract' occur in a statute, the reference is to an actual contract inferred from the circumstances, conduct, acts or relations of the parties, showing a tacit understanding. [citing numerous cases, 17 C.J.S. Contracts Section 4(a) and (b), and the Restatement of Contracts 1932, Section 5]"

This case received approval in United States v. Fraser Const. Co., 87 F.Supp. 1, at 6 (W.D.Ark.1949).

We search the record in vain to find evidence that whatever "contract" the Government claims existed met the test laid down in United States ex rel. Hargis v. Maryland Casualty Company, *supra*. Only one shred exists: Stewart's first letter to the Bureau in which he said, "I shall see that the Federal Government's interest is fully protected as to all sums expended by them on behalf of the above-named individuals." Appendix A. Yet Stewart's additional letters make it clear that he and his clients had no intention of paying back the Government. He did not reiterate any promise to reimburse in his October 6 note (Appendix E), and on January 26, 1967, he flatly stated, "I do not feel that the United States should demand reimbursement for compensation paid to either [Limbs, Jr., or Limbs, Sr.]." (Appendix I). To this latter note he attached a legal memorandum explaining why he denied having any obligation toward the United States. If anything, the circumstances in this case rebut the

existence of an "implied contract." Klebe v. United States, 263 U.S. 188, 191, 44 S.Ct. 58, 68 L.Ed. 244 (1923). The remaining government cases are weak, because their respective facts reveal a truly sound contractual foundation, totally absent here. In United States v. Crystal, 39 F.Supp. 220 (N.D. Ohio 1941), a Federal employee had to compensate the government after settling a claim against a third party tortfeasor. But the court was careful to mention that "directly after the accident, defendant made a *contract* with the government by which he agreed that in the event of a settlement he would reimburse the government for whatever compensation he received and for his 'surgical, medical, and hospital bills'. . . . [W]e cite the contract to show, and only to show, the interpretation placed upon the [Federal Employees' Compensation] Act by the defendant and his attorney before there had been a settlement." (Emphasis supplied) *Id.*, at 222.

In another case, United States v. Bettis, 39 F.Supp. 160 (S.D.Cal.1941), the court did not find for the plaintiff because of contract theory, but because the court was fearful that the Federal employee had effected a double recovery via both Government benefits and a successful lawsuit. The case turned on the meaning of the word "compensation" and the notion that Congress did not intend the statute to provide a windfall.[15]

The case at bar is different. No agreement existed between the Limbs' or Stewart and the United States, and assuming *arguendo* that there was one originally, it was duly canceled by Stewart and by the Limbs' through Stewart, thereby removing the case from the parameters of U. S. ex rel. Hargis v. Maryland Casualty Company, *supra*. Nor is there any chance of double recovery. The Government has suspended payments to the Limbs' and their attorney was careful to mention in his cor-

---

15. This reasoning also was mentioned as a basis for the decision in United States v. Crystal, *supra*, 39 F.Supp. at 222.

respondence with the Department of Labor that "a substantial part of the amount recovered will be used for future medical expenses." (Appendix I). And as will be noted hereafter the Limbs' have agreed that their Counterclaim for future benefits may be dismissed.

What remains of this case's foundation lies within the domain of torts. It was an injury that triggered the entire dispute, and the statute upon which the action is based abounds with references to "injury or death." We see no escape from the conclusion that the Complaint here of United States v. Limbs, Limbs and Stewart is "founded upon a tort."

We hold that the 3-year period of 28 U.S.C. § 2415(b) is the relevant limitation, and that it applies in cases brought under the Federal Employees' Compensation Act, 5 U.S.C. § 8101 et seq., *supra*. Consequently, the United States is barred from maintaining an action against these Defendants. The Government waited too long, once too often.

Turning to the theories asserted against Karl N. Stewart, the Government has alleged that the Federal Employees' Compensation Act created a lien on the funds he recovered and that additionally, the principles of legal ethics dictate that he should not have distributed the funds to the Limbs. Neither argument is well-founded, although each deserves comment.

DOES 5 U.S.C. § 8132 CREATE A STATUTORY LIEN AGAINST THE DEFENDANTS AND ESPECIALLY AGAINST KARL N. STEWART?

Plaintiff has made a mighty attempt to read into Section 8132 language that simply is not there. The fact is that the word "lien" does not appear in that section or for that matter in Section 8131. Nor is there anything that suggests that a lien could be created by implication.

A general discussion of liens in 51 Am.Jur.2d, section 38, reveals the following principle:

"A lien created by statute is limited in operation and extent by the terms of the statute and can arise and be enforced only in the event and under the facts provided for in the statute; the supposed policy of the state cannot, in a judicial tribunal, prevail over the plain language of the statute."

In other words this is an area where the courts are precluded from broad construction and freewheeling interpretation. Without concrete evidence of legislative intent, we cannot attempt to read into 5 U.S.C. § 8132 something that just is not present.[16]

A profitable exercise would be to compare the Federal Employees' Compensation Act with statutes that do provide for liens. California has such a scheme in connection with Workmen's Compensation.[17] There are statutory provisions

---

16. In F. P. Baugh, Inc. v. Little Lake Lumber Co., 297 F.2d 692 (9th Cir. 1961), cert. denied 370 U.S. 909, 82 S.Ct. 1256, 8 L.Ed.2d 404 (1962), the court held invalid a tax lien on partnership assets to the extent of partners denominated as "et al" in the tax lien notice. The court said at one point, "The character, operation, and extent of the lien

must be ascertained by the terms of the statute which creates and defines it. The lien should only extend to persons or conditions provided for by the statute and regulations, and then only where there has been a substantial compliance with all such requirements." *Id.*, at 695. Also

see United States v. Beaver Run Coal Co., 99 F.2d 610 (3d Cir. 1938).

17. See especially section 4903, California Labor Code (1971):

§ 4903. Allowable liens

The appeals board may determine, and allow as liens against any sum to be paid as compensation, any amount determined as hereinafter set forth in subdivisions (a) through (g) of this section. If more than one such lien be allowed, the appeals board may determine the priorities, if any, between the liens allowed. The liens which may be allowed hereunder are as follows:

(a) A reasonable attorney's fee for legal services pertaining to any claim

for liens, notices of liens, and subrogation.[18] Similarly in Arizona, there is a Workmen's Compensation lien [19] as well as specialized liens, including a farm services lien,[20] a hospital lien,[21] an innkeeper's lien [22] and a judgment lien on real property.[23] In both states, court decisions make it clear that the statutory scheme must be followed strictly.[24]

 It follows that the Federal Employees' Compensation Act creates no statutory lien against the Defendant Karl

---

for compensation either before the appeals board or before any of the appellate courts, and the reasonable disbursements in connection therewith.

(b) The reasonable expense incurred by or on behalf of the injured employee, as provided by Article 2 of Chapter 2 of Part 2 of this division.

(c) The reasonable value of the living expenses of an injured employee or of his dependents, subsequent to the injury.

(d) The reasonable burial expenses of the deceased employee, not to exceed the amount provided for by Section 4701.

(e) The reasonable living expenses of the wife or minor children of the injured employee, or both, subsequent to the date of the injury, where such employee has deserted or is neglecting his family. Such expenses shall be allowed in such proportion as the appeals board deems proper, under application of the wife or guardian of the minor children.

(f) The amount of unemployment compensation disability benefits which have been paid under or pursuant to the Unemployment Insurance Code in those cases where, pending a determination under Division 4 of this code, there was uncertainty whether such benefits were payable under the Unemployment Insurance Code or payable hereunder; provided, however, that any lien under this subdivision shall be allowed and paid as provided in Section 4904.

(g) The amount of unemployment compensation benefits and extended duration benefits paid to the injured employee for the same day or days for which he receives, or is entitled to receive, temporary total disability indemnity payments under this division; provided, however, that any lien under this subdivision shall be allowed and paid as provided in Section 4904. (Stats.1937, c. 90, p. 287, § 4903. Amended by Stats.1945, c. 507, p. 1007, § 1; Stats. 1947, c. 833, p. 1998, § 1; Stats.1949, c. 488, p. 837, § 1; Stats.1957, c. 1977, p. 3524, § 1; Stats.1963, c. 1556, p. 3140, § 1; Stats.1965, c. 1513, p. 3582, § 103, operative Jan. 15, 1966; Stats. 1967, c. 1721, p. 4289, § 2.)

18. *California Labor Code* §§ 3850–3864 (1971). Also note the subrogation provisions that apply to public employees in California, Government Code §§ 21450–21453 (1971 and 1972). Again, the word "lien" appears specifically in section 21453:

§ 21453. **Actions, liens, intervention; compromise; costs and expenses.** Under such contract, the state fund, in its own name or in the name of the board, or the Attorney General for the board, may, to recover such amounts regardless or whether such injury or death is industrial, commence and prosecute actions, file liens, or intervene in court proceedings all in the same manner and to the same extent, provided in Chapter 5, Part 1, Division 4 of the Labor Code, for the state fund or employer, except that such recovery shall not be made from benefits payable under this part because of such injury or death. The state fund or the Attorney General, as the case may be, may compromise claims before or after commencement of suit or entry of judgment for such amount as may be approved by a person duly authorized by the board for such purpose. The agreed cost of such service and the expense incidental thereto is a proper charge against the fund out of which the compensation of the injured or deceased person was paid or the contracting agency by which a local member was employed.

(Added Stats.1945, c. 123, p. 608, § 1, as amended Stats.1945, c. 1224, p. 2334, § 23; Stats.1949, c. 1215, p. 2138, § 9; Stats.1951, c. 612, p. 1788, § 51, operative Oct. 1, 1951.)

19. 8 A.R.S. Section 23–907 (1972)

20. 11 A.R.S. Sections 33–901, 33–902 (1972)

21. *Id.*, section 33–931

22. *Id.*, section 33–951

23. *Id.*, section 33–961.

24. In Arizona, Tway v. Payne, 55 Ariz. 343, 101 P.2d 455 (1940) states that "Judgment liens are creatures of statute, and are governed by its terms." at 456. See also McClanahan v. Hawkins, 90 Ariz. 139, 367 P.2d 196–198 (1962), where the court interpreted a lien strictly, and

N. Stewart. For the same reasons, we find that Mr. Limbs, Sr., and Mr. Limbs, Jr., are also unaffected by the Government's lien theory.

### IS KARL N. STEWART LIABLE BECAUSE HE DID NOT GIVE ANY OF THE THIRD PARTY SETTLEMENT TO THE GOVERNMENT?

The Plaintiff United States asserts that after Karl Stewart received notice of the Bureau's claim to reimbursement for its compensation payments, it was his duty to hold so much of his clients' funds as he "knew" belonged to the Government. This flies in the face of one elementary lesson that every lawyer quickly learns: that he impliedly agrees to turn a recovery over to his client. Goodyear Metallic Rubber Shoe Co. v. Baker's Estate, 81 Vt. 39, 69 A. 160 (1908).[25] In fact failure to do so may expose the attorney to a lawsuit, 7 Am. Jur.2d section 177, for he would be acting outside the scope of his express or implied authority.[26] Not only do the general rules of the profession cut against the Government but the laws of Arizona all but force Mr. Stewart to do what he did.

"An attorney licensed to practice law in this state may have his license revoked or suspended by the Supreme Court for any of the following reasons: . . . 6. Failure for thirty days after written demand and payment or tender of the fees and expenses due him from his clients to pay over or deliver to his client any money or other property belonging to his client which he has received as attorney in the course of his employment." A.R.S. Section 32–267, subsec. 6.

The United States cites 7 C.J.S. Attorney and Client § 52 for the proposition that a lawyer receiving funds with knowledge that they belong to a third person is responsible for payment to that person. Here, however, Mr. Stewart had no such knowledge; indeed his correspondence indicates that he did not believe the Plaintiff was entitled to the funds (See Appendix I). Consequently, he decided that he was obligated to distribute them to the Limbs'. This decision, we hold, was correct.

The Government cites several cases, especially Miller v. Rau, 216 Cal.App.2d 68, 30 Cal.Rptr. 612 (1963) for the proposition that if Stewart had notice of the Bureau's claim, he should have refrained from paying his clients. Each case is distinguishable on the facts,[27] including their lead opinion. The circumstances in Miller v. Rau are much more obviously directed against the attorney than in the case at bar. Mr. Rau represented a lim-

Shartzer v. Ulmer, 85 Ariz. 179, 333 P.2d 1084, 1087 (1959), involving an agistor's lien in which the court reiterated that liens like this never existed at common law. California cases indicate a similar tendency. cf. Martin v. Becker, 169 Cal. 301, 146 P. 665 (1915), In Re Matthews Construction Co., 120 F.Supp. 818, 822 (S.D.Cal.1954), and 15 Ops.Atty.Gen. of Calif. 3. A persuasive case from the South, Ellington v. Bradford, 242 N.C. 159, 86 S.E.2d 925, 927 (1955) states generally that lien statutes have been interpreted as extraordinary remedies in derogation of the common law and should be construed strictly. Also see 53 C.J.S. § 1(a), at 827.

25. See also 7 Am.Jur.2d, section 177: "An attorney impliedly agrees that he will promptly pay over any money collected for a client. Thus the attorney should forthwith notify his client of the collection of such money, and remit it to the client, less proper charges, or notify the client of his readiness to do so. If the attorney fails to pay over the money after demand, or after directions are given for its remittance, the attorney is liable to an action."

26. Volume 7 of Am.Jur.2d section 178, lists settlements or dismissals or confession of judgments performed without the client's permission as examples of culpable unauthorized acts. By analogy it would follow that an unauthorized retention of settlement proceeds would also incur liability.

27. For example, the Government cites Stiller v. Rogers, 69 Cal.App.2d Supp. 805, 159 P.2d 457 (1945). But there, the attorney was handling funds that had been stolen.

ited partnership, which received a series of remittances. These were delivered to Rau, who deposited them in his law firm's trust account. He failed to notify Miller or Miller's counsel that he had received them, and then he distributed the money. We also should note parenthetically that these funds were not the product of a lawsuit and Rau was a copartner as well as attorney.

Miller's notice to Rau overshadows the Government's notice to Stewart in several respects. Miller informed Rau not only of his claimed interest, but also of pendent litigation, his belief that the partnership agreement did not bind him, and his assertion that he had to give written approval before Rau could distribute the sale proceeds. 216 Cal.App. 2d, at 76, 30 Cal.Rptr. 612.

Obviously Rau was much more enmeshed in the transaction than Stewart. Rau's funds came from a sale and not from a settlement, and he had much more definite notice than did Karl Stewart.

The most glaring difference is that in the instant case, no rational person could conclude that the parties faced imminent litigation. The United States did not even file its complaint until six years later.[28]

■ Karl Stewart did not incur any liability when he paid his clients. He acted within the scope of his duties and the ethics of his profession. To punish him would be unfair and we won't do it.

## WHAT ALTERNATIVES DID THE UNITED STATES IGNORE IN THIS CASE?

The Government has made a big issue of their statutory "rights" to reimbursement under 5 U.S.C. § 8132. The Court wonders, however, why the United States never asserted these rights earlier, when they not only could have taken advantage of the word "shall" in Section 8132, but also of the options available under 5 U.S.C. § 8131.[29] Under section 8131(a)

---

28. The Court notes that the United States did not claim a definite interest in the funds until the Bureau's letter of December 27, 1966 (Appendix F). Until then the correspondence read like friendly notes, e. g., Appendix B, which says in part, "Section 26 [of the Federal Employees' Compensation Act] provides that the Bureau of Employees' Compensation *may* require an injured federal employee to prosecute a claim for damages in his own name. Section 27 requires that the employee reimburse the United States, out of the amount recovered, for disbursements made by the Bureau . . .

"We ask that you *keep us advised* of the status of the case from time to time and that you notify us before distributing the proceeds of any third party recovery or settlement" [Emphasis supplied]. Mr. Stewart followed this request. The United States had notice of the settlement on December 6, 1966. Although Mr. Limbs, Jr., was partially paid about a month earlier, both Defendants did not receive the balance until January 31, 1967. The United States never proceeded under any of the options available under section 8131. See notes 29 and 30, *infra*.

29. Section 8131(a) says that the Government may *require* the party to assign his action to the United States or sue on his

own. The Government misstates the statute in its brief (Memorandum in Support of Motion for Summary Judgment, page 5) by saying that the United States can "allow" the Limbs' to prosecute in their own name and repay the United States out of any recovery. The difference affects the Government's burden. The brief suggests that the Government, by doing nothing, was actually proceeding under section 8131(a)(2). This misstates the law. The United States had to take affirmative action and command the Limbs' to sue. By not doing so, they abandoned a statutory option. Additional support for this reasoning is available at 20 C.F.R. §§ 3.1 and 3.2:

§ 3.1 **Prosecution of third party action by beneficiary.**

If an injury or death for which compensation is payable under the Act is caused under circumstances creating a legal liability upon some person other than the United States to pay damages therefor, the Bureau *may require* the beneficiary to prosecute an action for damages against such third person. When required by the Bureau, such cause of action shall be prosecuted in the name of the injured employee or of his personal representative by an attorney of the beneficiary's choice. [Emphasis added]

(1) the Plaintiff could have required the Limbs' to assign to the United States any right of action they had against the third party tort-feasor. Under section 8131 (a)(2) they could have forced the Defendants to prosecute the action in their own name.[30] And once Karl Stewart did commence the action, nothing prevented the United States from filing a complaint in intervention. Rule 24, F.R.Civ.P. Another option would have been to enter into a contract of subrogation or assignment with the Defendants in order to insure that they would pay back the Government upon receiving their settlement monies. 5 U.S.C. §§ 8131(a)(1), 8132. And finally, when the action already was in progress, the Government could have filed its intervention or a lien to block everyone from disbursing or receiving the funds.

The Plaintiff did not follow any of these alternatives. Instead it remained torpid for six years. Whether the inactivity flowed from indecision, oversight, or design is beyond this Court's knowledge. But we do know that the tactic is inherently improper, and we must in good conscience reject it.[31]

## WHAT ABOUT THE COUNTERCLAIM?

■ Similarly the Counterclaim of Mr. Limbs, Jr., and Mr. Limbs, Sr., runs into equitable snags. If we bar the Government's action, then we must also find that the 3-year limitations period for the Counterclaim has also expired, which precludes the Limbs' from receiving their embargoed payments. Actually this does not represent a viable issue in that the Defendants themselves agreed at the hearing to dismiss their Counterclaim if the United States' motion for summary judgment should be denied, which of course, it is.

## CONCLUSION AND ORDER

Accordingly, the motion by the Plaintiff, United States of America, for summary judgment upon the Complaint against the Defendants Lee A. Limbs, Sr., Lee A. Limbs, Jr., and Karl N. Stewart is denied with prejudice. The cross-motion for summary judgment upon the Complaint propounded by the Defendants is granted. Rule 56 F.R.Civ.P. But the judgment shall include a dismissal of the Defendants Limbs' Counterclaim against the Government without prejudice to some future suit by said Defendants Limbs if and when they may, by law and exhaustion for future legitimate medical expenses of the settlement proceeds they have received, be entitled to maintain the same.

The foregoing shall constitute findings of fact and conclusions of law pursuant to Rule 52, F.R.Civ.P.

Let judgment be entered accordingly.

§ 3.2 Assignment of third party.
If an injury or death for which compensation is payable under said act is caused under circumstances creating a legal liability upon some person other than the United States to pay damages therefor, the beneficiary *shall, if required by the Bureau*, assign any right of action he may have to the United States. All such assignments shall be in writing and *no such cause of action shall vest in the United States* unless and until the assignment is accepted by the Bureau. [Emphasis added]

30. Note that if the Limbs' had refused to sue directly or assign their right against the third party tort-feasor, the United States had the option of stopping all compensation payments under section 8131 (b), *supra*. That the Bureau did in fact finally stop payments means nothing to us, for there was no explanation, statement of reasons, or statutory notice of any kind.

31. This is another reason that Congress passed the Federal 3-year statute of limitations. The Senate Judiciary Committee was convinced that the bill would attenuate "judicial hostility to old claims asserted by the Government . . ." *supra*, note 9, at 2513.

APPENDIX A.

March 25, 1960

Mr. Charles Donahue
Solicitor of Labor
U. S. Department of Labor
Washington, D. C. 20210
Attention: Robert J. Skahan, Labor Counsel

Dear Sir:

I represent Lee A. Limbs, Sr. and Lee A. Limbs, Jr. in their action against a Mr. Franks, for personal injuries sustained by them.

I would appreciate your forwarding to this office, statements of federal compensation received by Lee A. Limbs, Jr., and Lee A. Limbs, Sr., up to the date of Lee A. Limbs, Jr.'s return to employment as a Deputy U. S. Marshall. I would appreciate your forwarding to this office, all statements of cost for medical expenses incurred by Lee A. Limbs, Jr., and Lee A. Limbs, Sr., as of this date. Upon the receipt of the same, I shall see that the Federal Government's interest is fully protected as to all sums expended by them on behalf of the above-named individuals.

Thanking you for your cooperation in this matter.

I remain,

/s/ Karl N. Stewart
Attorney at law

APPENDIX B.

April 27, 1966

Mr. Karl N. Stewart
1140 East Washington
Phoenix, Arizona

Dear Mr. Stewart:

We have been advised that you have been retained by the above employees [Mr. Lee A. Limbs, Sr. and Mr. Lee A. Limbs, Jr.] to prosecute claims for damages against the party responsible for their injuries on May 2, 1965.

This office is responsible for protecting the interest of the United States under Sections 26 and 27 of the Federal Employees' Compensation Act [supra]. Section 26 provides that the Bureau of Employees' Compensation may require an injured federal employee to prosecute a claim for damages in his own behalf. Section 27 requires that the employee reimburse the United States, out of the amount recovered, for disbursements made by the Bureau. We are asking the Bureau to send you a current statement of disbursements in both cases. We are enclosing copies of reports from our files for your information and assistance.

We ask that you keep us advised of the status of the cases from time to time and that you notify us before distributing the proceeds of

any third party recovery or settlement. If we may assist you in any way in the prosecution of these cases, please do not hesitate to contact us. Thank you for your cooperation and assistance.

Yours sincerely,

Charles Donahue
Solicitor of Labor

by /s/ Robert J. Skahan
 Deputy Counsel for Employees'
 Compensation

APPENDIX C.

June 10, 1966

Mr. Karl N. Stewart
1140 E. Washington
Phoenix, AZ 85024

Dear Mr. Stewart:

We list below our disbursements on account of the injury by Lee A. Limbs, *Jr.* on May 2, 1965:

| | |
|---|---:|
| Compensation, 6/17/65–9/25/65 | $1,417.86 |
| Compensation, 11/21/65–2/16/66 | 936.41 |
| Gold Cross Amb. Service, 6/28/65 | 320.00 |
| St. Luke's Hospital, 5/30–6/10/65 | 382.85 |
| " " " 6/11–6/13/65 | 30.00 |
| Williams Mortuary (Amb), 3/30/65 | 11.50 |
| Dr. M. E. Christian, 3/2–3/30/65 | 820.00 |
| Orthopedic Clinic, 6/21–6/28/65 | 93.90 |
| Pratt County Hospital, 6/2–6/30/65 | 1,036.30 |
| Beverly Burke Pharmacy, 7/16/65 | 4.42 |
| Orthopedic Clinic 6/20–7/27/65 | 124.60 |
| " " 7/29–8/12/65 | 22.30 |
| " " | 570.65 |
| Dr. M. H. Byers, 11/18/65 | 70.00 |
| Good Samaritan Hospital 11/17–11/26/65 | 359.25 |
| Orthopedic Clinic, 2/1–3/7/66 | 21.66 |
| Grove's Surg. Supports, 3/4/66 | 170.00 |
| Orthopedic Clinic, 4/1–4/5/66 | 41.00 |
| | $6,415.09 |

It appears that Mr. Limbs returned to work on or about February 7, 1966 and that a portion of the compensation paid represents an unrefunded overpayment.

Attached is a copy of a medical report dated April 5, 1966.

Sincerely yours,

/s/ A. B. Schroeder
Assistant Deputy Commissioner

APPENDIX D.

U. S. DEPARTMENT OF LABOR
BUREAU OF EMPLOYEES' COMPENSATION
450 Golden Gate Avenue
Box 36022
San Francisco, California 94102

In reply refer to File No.

June 10, 1966 A13–223910

Mr. Karl N. Stewart
Attorney at Law
Suite 102, Valley Life Bldg.
1140 East Washington
Phoenix, Arizona 85034

Dear Mr. Stewart:

We list below our disbursements to date on account of the injury sustained by Lee A. Limbs, *Sr.* on May 2, 1965:

| | |
|---|---:|
| Compensation, 5/3/65–6/8/66 | $2,379.65 |
| Kingston Mem. Hospital 5/2–3/29/65 | 976.25 |
| St. Luke's Hospital, 5/29–6/15/65 | 639.30 |
| " " " 6/16–6/18/65 | 18.00 |
| Orthopedic Clinic, 6/2–7/27/65 | 275.35 |
| Medical Arts Center, 5/2–6/29/65 | 441.00 |
| Orthopedic Clinic, 7/29–8/27/65 | 83.00 |
| " " 8/31–9/28/65 | 94.65 |
| " " 9/30–12/10/65 | 210.60 |
| N. E. Allison, DDS, 5/14/65 | 12.00 |
| Orthopedic Clinic, 1/4–5/10/66 | 205.70 |
| | $5,335.50 |

Attached are copies of reports from Dr. A. L. Swenson dated April 5, 1966 and May 12, 1966.

Sincerely yours,

/s/ A. B. Schroeder
Assistant Deputy Commissioner

cc: Mr. Robert J. Skahan
Dep. Counsel for EC

Attachments

## APPENDIX E.

KARL N. STEWART
ATTORNEY AT LAW
Suite 102, VALLEY LIFE BLDG.
1140 EAST WASHINGTON
PHOENIX, ARIZONA 85034
Phone 258-2761

October 6, 1966

Mr. Robert J. Skahan
Deputy Counsel for Employees Compensation
Regional Office
U. S. Department of Labor
Bureau of Employees Compensation
450 Golden Gate Avenue
San Francisco, California

Re: Lee A. Limbs, Jr.
File No. A13223909
Date of Injury: 5/2/65

Dear Mr. Skahan:

Mr. Lee A. Limbs, Jr. has heretofore applied for a determination as to the amount of compensation that he is entitled to receive as a result of his injury on May 2, 1965, while engaged in his duties as a Deputy U. S. Marshal. As of the date of this letter, no determination as to the rate of compensation that Mr. Limbs, Jr. is to receive has been made by your office. Mr. Limbs, Jr. has not been paid any compensation since January 1966, although he is not at the present time engaged in his duties as a Deputy U. S. Marshal due to the injury of May, 1965.

As you will note, Dr. Alvin Swenson (the attending physician for Mr. Limbs, Jr.) in his report states that the injury to the right arm has become stationary while the injury to the right hip is still in a degenerative stage.

Your immediate attention is directed to putting Mr. Limbs, Jr. on a current status as far as compensation is concerned and paying to Mr. Limbs, Jr. the monthly amount of compensation that is due him for the months of February through September, 1966.

Thank you for your cooperation in this matter.

Very truly yours,

/s/ Karl N. Stewart

atm
cc: Lee Limbs, Jr.

## APPENDIX F.

December 27, 1966

Mr. Karl N. Stewart
1140 E. Washington
Phoenix, Az

Dear Mr. Stewart:

Reference is made to the third party claims of Mr. Lee A. Limbs, Sr. and Mr. Lee A. Limbs, Jr., against the party responsible for the injuries which they sustained on May 2, 1965.

We have been advised that a settlement has been concluded with the third party. As you have been advised, the Federal Employees' Compensation Act [*supra*] provides that in the event of a recovery from the third party, the compensation beneficiary is required to reimburse the Bureau of Employees' Compensation for its disbursements.

By a copy of this letter, we are requesting the Bureau to forward to you a current assessment of disbursements. When you receive the information from the Bureau, please complete and forward to us the enclosed statement of recovery (one for each claimant) and make the remittance accordingly. Please make the check payable to Bureau of Employees' Compensation, Labor.

We appreciate your cooperation and assistance.

Sincerely,

Charles Donahue
Solicitor of Labor

by /s/ Robert J. Skahan, Deputy
Counsel for Employees'
Compensation

APPENDIX G.

December 23, 1966

Mr. Karl N. Stewart
1140 East Washington
Phoenix, AZ

Dear Mr. Stewart:

We refer to the compensation claim of Mr. Lee A. Limbs, Jr.

It is understood Mr. Limbs has recovered damages from a third party. In the circumstances, pending receipt of advice as to the amount recovered and essential information as to Mr. Limbs' employment and pay status since returning to work on February 7, 1966, we are unable to extend further medical or other benefits to him.

Our disbursements in this case are as follows:

| | |
|---|---|
| Compensation for disability to 2/6/66 | $2,246.86 |
| Medical | 4,414.95 |
| Total subject to refund under sec. 27 | 6,660.91 |
| Overpayment of compensation 2/7–2/16/66 | 107.41 |
| Total disbursement | $6,708.32 |

We would appreciate your informing the Deputy Counsel for Employees' Compensation, Office of the Solicitor, U. S. Department of Labor, Washington, D. C. 20210, of the terms of the settlement so that we may proceed further in the case.

Sincerely yours,

/s/ A. B. Schroeder
Assistant Deputy Commissioner

APPENDIX H.

U. S. DEPARTMENT OF LABOR
BUREAU OF EMPLOYEES' COMPENSATION
450 Golden Gate Avenue
Box 36022
San Francisco, California 94102
January 10, 1967 A13–223910

Mr. Karl N. Stewart
Attorney at Law
Suite 102 Valley Life Bldg.
1140 East Washington
Phoenix, Arizona 85034

Dear Mr. Stewart:

We list below a summary of our disbursements on account of the injury sustained by Lee A. Limbs, Sr., on May 2, 1965:

| | |
|---|---|
| Compensation 5/3/65–12/21/66 | $3,636.95 |
| Medical | 2,987.85 |
| Total | 6,624.80 |

Payment of benefits was suspended as of December 22, 1966. Further payment cannot be considered until the details of the third party recovery made by Mr. Limbs are known and the appropriate refund to the Bureau has been made.

Sincerely yours,

/s/ A. B. Schroeder
Assistant Deputy Commissioner

cc: Mr. Robert J. Skahan
Dep. Counsel for EC

APPENDIX I.

KARL N. STEWART
ATTORNEY AT LAW
SUITE 102, VALLEY LIFE BLDG.
1140 EAST WASHINGTON
PHOENIX, ARIZONA 85034

Phone 258–2761

January 25, 1967

Mr. Robert J. Skahan
Deputy Counsel for Employees'
 Compensation
U. S. Department of Labor
Office of the Solicitor
Washington, D. C. 20210

Re: Lee A. Limbs, Sr.
File No. A13–223,910
Lee A. Limbs, Jr.

Dear Mr. Skahan:

I have received your letter requesting reimbursement for amounts advanced by the United States for medical expenses and compensation on behalf of Lee A. Limbs, Sr. and Lee A. Limbs, Jr.

I do not feel that the United States should demand reimbursement for compensation paid to either of the above named individuals, although they have recovered the amounts stated on the enclosed statement from a third party wrongdoer, in that a substantial part of the amount recovered will be used for future medical expenses. (See also enclosed affidavit as to approximation of future medical expense).

It is clear, based upon points and authorities cited in my enclosed memorandum, that the United States does not have a right to recover for compensation and medical expense of either of the above named individuals in this case.

Thank you for your cooperation in this matter.

Very truly yours,

/s/ Karl H. Stewart

atm
cc: A. B. Schroeder
 U. S. Marshal Jack Mosher
 Lee A. Limbs, Sr.
 Lee A. Limbs, Jr.

## APPENDIX J.

February 15, 1967

Mr. Karl N. Stewart
Attorney at Law
Suite 102, Valley Life Bldg.
1140 East Washington
Phoenix, Arizona 85034

Re: Lee A. Limbs, Sr.
 File No. A13–223910
 Lee A. Limbs, Jr.
 File No. A13–223909

Dear Mr. Stewart:

Reference is made to your letter dated January 25, 1967, wherein you asserted that the claim of the United States to be reimbursed for the disbursements of the Bureau of Employees' Compensation is purely discretionary.

In support of your contention, you cited 42 U.S.C. 2651 and the related decision of United States v. Ammons, 242 F.Supp. 461 (D.C.1965). The above section is part of the Federal Medical Care Recovery Act and is inapplicable to the claims of the Bureau of Employees' Compensation.

In contrast, we predicate our claim to reimbursement on the Federal Employees' Compensation Act, particularly 5 U.S.C. 8132, which provides that a compensation beneficiary must reimburse the United States in the event that he concludes a recovery with a third party. Court decisions concerned with the Compensation Act unequivocally have held that the United States must be reimbursed. In the U. S. Supreme Court case of Dahn v. Davis, 258 U.S. 421, 430, 42 S.Ct. 320, 322, 66 L.Ed. 696 (1921), the Court held

> Plainly, by these two sections [5 U.S.C. 8131 and 8132], Congress deals with the liability of persons "other than the United States" to employees entitled to compensation under

the Act, not for the purpose of increasing that compensation, but for the purpose of reimbursing the Government for payments made and of indemnifying it against other amounts payable in the future.

In a very recent decision involving the Federal Employees' Compensation Act, United States v. Hayes, 254 F.Supp. 849, 851 (D.C.1966), the Court stated:

It is, therefore, clear from the wording of the statute that the defendant in the instant case, upon settlement of his personal injury claim, was obliged to make immediate reimbursement to the United States.

Consequently, the United States must be reimbursed for its disbursements out of the proceeds of the two settlements.

The Bureau of Employees' Compensation has made disbursements of $6,624.80 to Mr. Lee A. Limbs, Sr. and $6,768.52 to Mr. Lee Limbs, Jr. We request that in accordance with 5 U.S.C. 8132, you remit the above amounts and make the checks payable to "Bureau of Employees' Compensation, Labor."

In your memorandum, you advised that Mr. Limbs, Jr. had contracted with Aetna Insurance Company for a health and accident policy. Moreover, you indicated that Aetna had reimbursed the Bureau for the amounts paid on behalf of Lee A. Limbs, Jr. for medical expenses, but we have no record of this reimbursement. Secondly, these insurance policy contracts secured by Federal Employees exclude the insurer from liability for employment-related injuries.

Your cooperation and assistance in completing reimbursement will be appreciated.

Yours sincerely,

Charles Donahue
Solicitor of Labor

By————————————————
Robert J. Skahan, Deputy Counsel
for Employees' Compensation

SOL:FMcDermott:ejb

. APPENDIX K.

April 4, 1967

Mr. Karl N. Stewart
1140 E. Washington
Phoenix, AZ

Dear Mr. Stewart:

· Reference is made to our letter dated February 15, 1967, wherein we advised you that under the Federal Employees' Compensation Act, particularly 5 U.S.C. 8132, we are unable to waive or compromise the right to reimbursement of the Bureau of Employees' Compensation.

The Bureau disbursed $6,624.80 to Mr. Limbs, Sr. and $6,768.32 to Mr. Limbs, Jr. These disbursements included payments for compensation to these employees and payments for medical expenses incurred by them. The Compensation Act makes no distinction between com-

pensation and medical payments; both types of payment are subject to reimbursement.

You indicated in your January 25, 1967 letter that the United States should not demand reimbursement since a "substantial part of the amount recovered will be used for future medical expenses." This is to advise you that these third party recoveries have not permanently ended your clients' rights to benefits from the Bureau of Employees' Compensation. From the recoveries which they obtained, a credit is established at the Bureau. This credit is the net amount remaining after the deduction of the attorney's fees and the reimbursement to the Bureau. The credit in the name of Mr. Limbs, Jr. is $38,850.00, and the credit in the name of Mr. Limbs, Sr. is $11,775.20. When these amounts have been exhausted by your clients in payment for medical expenses or time lost from work as a result of their May 2, 1965 accident, the Bureau will resume payments.

We again request that you remit $6,624.80 as reimbursement for Mr. Limbs, Sr., and $6,768.32 as reimbursement for Mr. Limbs, Jr. Please make the check payable to Bureau of Employees' Compensation, Labor.

Your anticipated cooperation is appreciated.

Yours sincerely,

Charles Donahue
Solicitor of Labor

By /s/ Robert J. Skahan,
Deputy Counsel for Employees'
Compensation

## APPENDIX L.

July 3, 1967

Mr. Lee A. Limbs, Jr.
1484 Granada
Phoenix, Arizona 85000
 Re: File No. A13–223,909

Dear Mr. Limbs:

We are writing with regard to the settlement of your claim against the party responsible for your May 2, 1965 injuries. Although you effectuated a recovery of your claim on June 2, 1966, your attorney did not advise us of the settlement until January 25, 1967. At that time, Mr. Stewart indicated that you had settled your claim for $45,000.00. Although Mr. Stewart and you had received notification from the Bureau on December 28, 1966, which indicated that it had paid $6,768.32 to you or on your behalf, Mr. Stewart contended that you had no obligation to reimburse the Bureau out of the recovery monies.

It is provided in 5 U.S.C. 8132 that when an employee, who is a beneficiary of the Bureau of Employees' Compensation, recovers damages from a third party, he is required to reimburse the Bureau for its disbursements. All the Bureau's disbursements, medical payments and compensation, are subject to reimbursement. Therefore, you are unquestionably required to remit $6,768.32 to this office.

We have been contacted by John W. Adler, First Assistant, Administration Division, United States Department of Justice and Mr. Hamilton, also of the Department of Justice, with regard to the question of when the Bureau would resume paying compensation to you. We have advised both of these individuals that since there has been a third party recovery and the Bureau has not been reimbursed, the Bureau has no intention under the circumstances of remitting compensation. We explained to them, however, that as soon as we received reimbursement from you, we would immediately advise you as to when you could expect to receive compensation. Assuming that you reimburse the Bureau for its past disbursements, the fact that you recovered damages from a third party does not prevent you from receiving additional compensation. When your net recovery is exhausted, you are entitled to a resumption of compensation provided you can establish that you are still disabled and the disability is related to your May 2, 1965 injuries. In contrast, if you fail to reimburse the Bureau for its payments, you will *terminate* your right to additional compensation.

Based on a recovery of $45,000.00, you personally receive $26,081.68; your attorney receives $12,150.00; and the Bureau must be paid $6,768.32.

If you have any questions with regard to reimbursement, please do not hesitate to contact us. Please make your check in the amount of $6,78.32 payable to "Bureau of Employees' Compensation, Labor" and forward it to this office. We anticipate your cooperation within thirty days.

Yours sincerely,

Charles Donahue
Solicitor of Labor

By————————————————
 Robert J. Skahan, Deputy Counsel
 for Employees' Compensation

SOL:FVMcDermott;pmr

APPENDIX M.

U. S. DEPARTMENT OF LABOR
OFFICE OF THE SOLICITOR
WASHINGTON 20210
July 3, 1967

Mr. Lee A. Limbs, Sr.
1817 E. Adams
Phoenix, Arizona 85000

Re: File No. A13–223,910

Dear Mr. Limbs:

We are writing with regard to the settlement of your claim against the party responsible for your May 2, 1965 injuries. Although you effectuated a recovery of your claim on June 2, 1966, your attorney did not advise us of the settlemen tuntil January 25, 1967. At that time, Mr. Stewart indicated that you had settled your claim for $25,000.00 Although Mr. Stewart and you had received notification from the Bureau on January 10, 1967, which indicated that it had paid $6,624.80

to you or on your behalf, Mr. Stewart contended that you had no obligation to reimburse the Bureau out of the recovery monies.

It is provided in 5 U.S.C. 8132 that when an employee, who is a beneficiary of the Bureau of Employees' Compensation, recovers damages from a third party, he is required to reimburse the Bureau for its disbursements. All the Bureau's disbursements, medical payments and compensation, are subject to reimbursement. Therefore, you are unquestionably required to remit $6,624.80 to this office.

We have been contacted by John W. Adler, First Assistant, Administration Division, United States Department of Justice and Mr. Hamilton, also of the Department of Justice, with regard to the question of when the Bureau would resume paying compensation to you. We have advised both of these individuals that since there has been a third party recovery and the Bureau has not been reimbursed, the Bureau has no intention under the circumstances of resuming compensation. We explained to them, however, that as soon as we received reimbursement from you, we would immediately advise you as to when you could expect to receive compensation. Assuming that you reimburse the Bureau for its past disbursements, the fact that you recovered damages from a third party does not prevent you from receiving additional compensation. When your net recovery is exhausted, you are entitled to a resumption of compensation provided you can establish that you are still disabled and the disability is related to your May 2, 1965 injuries. In contrast, if you fail to reimburse the Bureau for its payments, you will *terminate* your right to additional compensation.

Based on a recovery of $25,000.00, you personally receive $13,497.65; your attorney receives $6,600.00; and the Bureau must be paid $6,624.80.

If you have any questions with regard to reimbursement, please do not hesitate to contact us. Please make your check in the amount of $6,624.80 payable to "Bureau of Employees' Compensation, Labor" and forward it to this office. We anticipate your cooperation within thirty days.

Yours sincerely,

Charles Donahue
Solicitor of Labor

s. By Robert J. Skahan

Robert J. Skahan, Deputy Counsel
for Employees' Compensation