**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Lee A. LIMBS, Jr., et al., Defendants-Appellees.**

No. 73–2663.

United States Court of Appeals, Ninth Circuit.

Oct. 3, 1975.

Rehearing Denied Oct. 31, 1975.

Karl N. Stewart (argued), Phoenix, Ariz., Lawrence J. Marks (argued), of Kanne & Bickert, Phoenix, Ariz., for defendants-appellees.

## OPINION

Before HUFSTEDLER, CHOY and WALLACE, Circuit Judges.

WALLACE, Circuit Judge:

The government appeals from the district court's grant of summary judgment. The facts are detailed in the opinion of the district court, reported at 356 F.Supp. 1004 (D.Ariz.1973). To summarize briefly, government employees Lee Limbs, Sr., and Lee Limbs, Jr., were injured in an automobile accident on May 2, 1965, while performing official duties. The government paid them compensation under the Federal Employees' Compensation Act, 5 U.S.C. § 8101 *et seq.* Section 8132 provides that if the beneficiary of compensation

> receives money or other property in satisfaction of that liability as a result of suit or settlement by him or in his behalf, the beneficiary, after deducting therefrom the costs of suit and a reasonable attorney's fee, shall refund to the United States the amount of compensation paid by the United States . . . .

5 U.S.C. § 8132 (1970), *as amended,* 5 U.S.C.A. § 8132 (Supp.1975). On May 26, 1966, each Limbs received a settlement from the third party tortfeasor, $25,000 for Limbs, Sr., and $45,000 for Limbs, Jr. The government learned of these settlements on December 6, 1966, and on December 27 demanded reimbursement. The Limbses responded on January 25, 1967, refusing to reimburse.[1]

The government brought this suit on June 13, 1972, to recover the amounts paid as compensation from each Limbs and from their attorney Karl Stewart. The district court held that the claims against the Limbses were barred by the statute of limitations applicable to

---

William E. Gwatkin, III, of Civ. Div., Admiralty & Shipping Sec., San Francisco, Cal., for plaintiff-appellant.

1. All of the relevant correspondence between the Limbses and the United States is reprinted in the appendices to the district court's opinion, 356 F.Supp. at 1018–28.

government suits and that no claim was stated against Stewart. We reverse the judgment as to the Limbses and affirm as to Stewart.

## I

■ In order to place actions by the United States on an equal footing with those by private litigants, Congress passed a statute of limitations in 1966 for government damage suits, 28 U.S.C. § 2415. *See, e.g.,* S.Rep.No.1328, 89th Cong., 2d Sess. 2, 7 (1966), *reprinted in* 2 U.S.Code Cong. and Admin.News, 89th Cong., 2d Sess. 2502 (1966). Essentially, Congress assigned limitations periods according to the common law division of actions. *United States v. Neidorf,* 522 F.2d 916, 919 (9th Cir. 1975). "Thus, whenever the United States sues for damages, the substance of the claims must be characterized for purposes of section 2415 as sounding in either tort, contract or quasi-contract." *Id.*

■ In the present case, the district court reasoned that the government's claims against the Limbses were "founded upon a tort" because "[t]he catalytic event was a car accident and the basis of the dispute is funds earmarked for medical expenses." 356 F.Supp. at 1011. Thus, the court held, the suit was barred by 28 U.S.C. § 2415(b):

> [E]very action for money damages brought by the United States or an officer or agency thereof which is founded upon a tort shall be barred unless the complaint is filed within three years after the right of action first accrues . . . . .

The government's claim, however, is founded not upon tort but upon quasi-contract. The right to recover the benefit payments does not have its genesis in the automobile accident; it is triggered by the recovery from the third party. This claim is not for damages suffered as a result of an injury to the government caused by the Limbses; it is for restitution of payments in order to avoid a double recovery. The principle is not to vindicate impairment of a right; it is to prevent unjust enrichment. *See generally,* W. Keener, Quasi-Contracts 5–25 (1893).

■ The fact that the government's right to reimbursement derives from statute rather than common law does not affect characterization of the claim as quasi-contractual. A statutory right of recovery may be deemed quasi-contractual if it "is a legal obligation, not based upon agreement, [and] enforced . . . by compelling the obligor to restore the value of that by which he was unjustly enriched." Corbin, *Quasi-Contractual Obligations,* 21 Yale L.J. 533, 550 (1912) (emphasis deleted). Thus in *Steamship Co. v. Joliffe,* 69 U.S. (2 Wall.) 450, 456–457, 17 L.Ed. 805 (1864), a right of action by a harbor pilot for half-pilotage fees, although given by statute, was quasi-contractual. In *Whitman v. Oxford National Bank,* 176 U.S. 559, 567, 20 S.Ct. 477, 44 L.Ed. 587 (1900), a creditor's suit against a stockholder of an insolvent corporation, although predicated upon a statutory right, was quasi-contractual in nature. *See also, e.g., Nathanson v. NLRB,* 344 U.S. 25, 27, 73 S.Ct. 80, 97 L.Ed. 23 (1952); *Brown v. O'Keefe,* 300 U.S. 598, 606, 57 S.Ct. 543, 81 L.Ed. 827 (1937). Indeed, it has been said that "[a] statutory obligation which does not rest upon the consent of the parties, is clearly quasi-contractual in its nature." W. Keener, Quasi-Contracts 16 (1893). *See also* Corbin, *Quasi-Contractual Obligations,* 21 Yale L.J. 533, 537 (1912).

■ The government's suit was timely filed, therefore, because quasi-contract actions are subject to the six-year limitation period of 28 U.S.C. § 2415(a):

> [E]very action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred

unless the complaint is filed within six years after the right of action accrues . . . .[2]

■ The Limbses argue that "contract implied in law" in section 2415(a) refers "to an actual contract inferred from the circumstances, conduct, acts or relations of the parties, showing a tacit understanding," quoting *United States ex rel. Hargis v. Maryland Cas. Co.*, 64 F.Supp. 522, 527 (S.D.Cal.1946). "Contract implied in law," however, is a synonym for quasi-contract; it is not an obligation based upon consent. 1 A. Corbin, Contracts § 19 (1963). Moreover, the legislative history of section 2415(a) clearly shows that, in addition to the consensual obligations of express or implied contract, nonconsensual quasi-contractual obligations were to be subject to the six-year limitation period.[3] *United States v. Neidorf, supra*, 522 F.2d at 919.

For example, in *United States v. Neidorf, supra*, we held that a creditor's right of action against an insolvent corporation's stockholders is quasi-contractual and subject to the six-year limitation period of section 2415(a). Likewise, in *United States v. Franklin National Bank*, 376 F.Supp. 378 (E.D.N.Y.1973), a fraudulent conveyance was held not to be an action founded upon a tort for purposes of section 2415(b). Such a suit is based upon a quasi-contractual liability for which the government has six years to sue. *United States v. Neidorf, supra*, 522 F.2d at 918–919.

There is also a practical reason for avoiding tort characterization of the government's reimbursement claim. Presumably, such a tort cause of action would first accrue at the time of injury. It is not uncommon, however, for personal injury litigation to last longer than three years. Thus, the government's claim could become stale before the beneficiary's obligation to repay arises.

We, therefore, hold that a suit under 5 U.S.C. § 8132 for restitution of compensation benefits is a quasi-contractual claim for which the government has six years to sue.

II

The district court held that the government failed to state a claim against the Limbses' attorney, Karl Stewart. *See* 356 F.Supp. at 1013–16. Stewart had received notice of the government's claim prior to payment of the funds to the Limbses. The government's claim against Stewart rests upon

> the principle that where one receives money as an agent, to which his principal has no right, and where he receives notice not to pay to his principal prior to disbursement of the funds, an action for money had and received lies against such party.

*Miller v. Rau*, 216 Cal.App.2d 68, 76, 30 Cal.Rptr. 612, 616 (1963). *See also Johnstone v. State Bar of Cal.*, 64 Cal.2d 153, 155–56, 49 Cal.Rptr. 97, 98, 410 P.2d 617, 618 (1966); *General Exchange Ins. Corp. v. Driscoll*, 315 Mass. 360, 365, 52 N.E.2d 970, 973 (1944). The essence of the theo-

---

**2.** We need not decide whether the cause of action accrued on the date that the Limbses received the third party settlement or on the date the government first learned of the settlement. The earliest that the limitation period would have begun running was July 18, 1966, when 28 U.S.C. § 2415 became effective. 28 U.S.C. § 2415(g); *see United States v. Neidorf*, 522 F.2d 916, 917 n.1 (9th Cir. 1975). The suit was filed within six years of that date.

**3.** · The six-year limitation would apply to all types of contracts, express or implied in law or in fact. This wording is intended to include quasi-contracts involving unjust en-

richment wherein the debtor receives money from the Government to which he is not entitled, regardless of whether the payment is made pursuant to agreement or as a gratuity.

*Hearings on H.R. 13652 Before Subcomm. No. 2 of the House Comm. on the Judiciary*, 89th Cong., 2d Sess. 7 (1966) (statement by Mr. Douglas, Assistant Attorney General). *See also* H.R.Rep.No.1534, 89th Cong., 2d Sess. 4, 11 (1966); S.Rep.No.1328, 89th Cong., 2d Sess. 2, 12 (1966), *reprinted in* 2 U.S.Code Cong. and Admin.News, 89th Cong., 2d Sess. 2502 (1966); 112 Cong.Rec. 6876 (1966) (remarks of Senator Ervin).

ry is that the claimant has a property right in the monetary fund which the attorney converts by payment to his client. *See* 2 Restatement (Second) of Agency § 349 (1958).

 We need not pass upon the merits of this theory, however, because in all the cases cited by the government, the claimant's right to the fund was based upon an express agreement of which the attorney was aware. In the present case, the government never claimed that there was a contractual agreement to reimburse. Furthermore, Stewart denied any right of the government in the funds. *See United States v. Limbs, supra*, 356 F.Supp. at 1023–24 (Appendix I); *cf.* Ariz.Rev.Stat. § 32–267(6) (1956). Under the facts of this case, we do not believe that the government's interest in the fund received from the third party rose to such a property right that an attorney should be held liable in conversion for payments to his clients.

The 1974 amendment to section 8132 supports this view. The section now states that "[n]o court, insurer, attorney, or other person shall pay or distribute to the beneficiary or his designee the proceeds of such suit or settlement without first satisfying or assuring satisfaction of the interest of the United States." 5 U.S.C.A. § 8132 (Supp.1975), *amending* 5 U.S.C. § 8132 (1970). The legislative history of the amendment indicates that this language creates a lien on the recovery. S.Rep.No.93–1081, 93d Cong., 2d Sess. (1974), *reprinted in* 3 U.S. Code Cong. and Admin.News, 93d Cong., 2d Sess. 5341, 5351 (1974). An attorney such as Stewart who receives settlement from a third party tortfeasor now has an explicit duty to reimburse the federal government before paying his clients. There is no indication that this amendment attempted to codify existing law. Thus, the negative implication of this amendment is that an attorney previously had no such duty. We, therefore, hold that, at least prior to the 1974 amendment to 5 U.S.C. § 8132, an attorney who, as in this case, pays his clients the proceeds of a third party settlement is not liable in conversion to the United States.

Affirmed in part, reversed and remanded in part.