**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**STATE OF MICHIGAN,**
**Defendant–Appellant.**

**No. 87–1858.**

United States Court of Appeals,
Sixth Circuit.

Argued April 6, 1988.

Decided July 8, 1988.

Rehearing Denied Aug. 23, 1988.

**804**

Richard R. Roesch, Robert C. Ward, argued, Atty. Gens. Office, Lansing, Mich., for defendant-appellant.

John A. Smietanka, U.S. Atty., Grand Rapids, Mich., Richard A. Correa, Tax Div.-Dept. of Justice, Michael L. Paup (Lead), Chief, Appellate Section, Michael C. Durney, Acting Asst. Atty. Gen., Tax Div., Dept. of Justice, William S. Rose, Gary R. Allen, David E. Carmack, John J. McCarthy, argued, Dept. of Justice, Tax Div., Washington, D.C., for plaintiff-appellee.

Before MARTIN, WELLFORD, and NELSON, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

The State of Michigan appeals the district court's decision declaring unconstitutional certain provisions of the Michigan General Sales Tax Act, Mich.Comp.Laws § 205.51 *et seq.* The court held that the incidence of the tax levied under this statute falls on federal credit unions which the court concluded were federal instrumentalities immune from state taxation under the Supremacy Clause of the United States Constitution. 635 F.Supp. 944 (1985). We affirm.

The United States brought this action in federal district court on behalf of approximately 238 federally-chartered credit unions located in Michigan. A federal credit union is a non-profit, cooperative association organized under the Federal Credit Union Act, 12 U.S.C. § 1752 *et seq.*, "for the purpose of promoting thrift among its members and creating a source of credit for provident or productive purposes." *Id.* at § 1752(1).

The complaint, filed at the request of the National Credit Union Administration, a federal agency, sought a declaratory judgment that Michigan's sales tax law violated the Supremacy Clause because it effectively taxed purchases made by federal credit unions in Michigan. The United States alleged that the law was unconstitutional because federal credit unions are federal instrumentalities entitled to the same immunity from state taxation as the United States. Therefore, the United States claimed, because the legal incidence of this sales tax falls on the purchaser, the tax could not be constitutionally imposed on purchases by federal credit unions. The United States also alleged that the state's sales tax statute unconstitutionally discriminates against the United States in that no exemption from the tax is extended to federal credit unions while Michigan and its institutions are exempt from the sales tax.

The district court granted the United States' motion for partial summary judgment and denied Michigan's summary judgment motion. The court held, first, that the Tax Injunction Act, 28 U.S.C. § 1341, did not preclude it from asserting jurisdiction over the case. The court then held that federal credit unions are federal instrumentalities immune from state taxation under the Supremacy Clause. Next, the district court concluded that the legal incidence of Michigan's sales tax falls on the purchaser, and that, therefore, the law unconstitutionally imposed a tax on federal instrumentalities. Finally, the court found that the six-year statute of limitations for actions by the United States for recovery of monies, set forth in 28 U.S.C. § 2415, applies to this case, rather than the state's four-year statute of limitations for tax refund cases. The court concluded that, in light of these holdings, it need not consider the United States' alternative argument, that the sales tax, as applied, unconstitutionally discriminates against federal credit unions.

The parties subsequently stipulated that the amount of the refund, properly calculated as of July 1, 1986, was $2,781,646.67, plus interest. On June 30, 1987, the district court entered a final judgment in ac-

cordance with that stipulation. Michigan now appeals.

██ Michigan first challenges the district court's jurisdiction. Under 28 U.S.C. § 1345, federal district courts "have original jurisdiction of all civil actions, suits or proceedings commenced by the United States." Michigan argues, however, that the Tax Injunction Act, which prohibits federal district courts from enjoining, suspending, or restraining "the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State," 28 U.S.C. § 1341, precludes the United States from maintaining this action. The state recognizes that the United States is not subject to this limitation if the federal government is challenging the constitutionality of a state tax being levied on the United States or on one of its agencies or instrumentalities, *see, e.g., Dep't of Employment v. United States*, 385 U.S. 355, 87 S.Ct. 464, 17 L.Ed.2d 414 (1966), but Michigan claims that this jurisdictional determination depends upon a finding that federal credit unions are, in fact, federal instrumentalities.

Michigan's position is untenable for it conflates a jurisdictional issue and a substantive determination. The Supreme Court refuted a similar argument in *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). In that case, the defendants had argued that the district court had properly dismissed the plaintiff's complaint for lack of federal jurisdiction because it failed to state a cause of action. The court reversed, holding that whether the complaint stated a valid claim could only be decided after, and not before, the district court had assumed jurisdiction over the controversy. "If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want or jurisdiction." *Id.* at 682, 66 S.Ct. at 776.

The Court recognized only two exceptions to this principle: where the alleged claim under the Constitution or federal statutes is clearly immaterial and made solely to obtain jurisdiction; or where the claim is wholly insubstantial and frivolous. *Id.* at 682–83, 66 S.Ct. at 776. Michigan did not and could not argue that either of these exceptions is applicable here. Therefore, the district court correctly ruled that the Tax Injunction Act did not bar the United States from maintaining this action, and the court properly exercised jurisdiction over this case under 28 U.S.C. § 1345.

██ Michigan's jurisdictional challenge is also unavailing in light of our decision regarding the status of federal credit unions. The state contends that the district court erroneously concluded that federal credit unions are federal instrumentalities entitled to immunity from state taxation. We are not persuaded.

In the famous case of *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819), the Supreme Court established the doctrine of federal immunity from state taxation. In that case, the Court held that, absent Congressional consent, the federal government and its instrumentalities are immune from state taxation under the Supremacy Clause of the Constitution. *Id.* Congress clearly has not consented to state taxation of federal credit unions; to the contrary, Congress has expressly prohibited state taxation of federal credit unions, except for *ad valorem* taxation of real and personal property. 12 U.S.C. § 1768.[1]

---

1. Section 1768 provides in part that "Federal credit unions ..., their property, their franchises, capital, reserves, surpluses, and other funds, and their income shall be exempt from all taxation now or hereafter imposed by the United States or by any State, Territorial, or local taxing authority; except that any real property and any tangible personal property of such Federal credit unions shall be subject to Federal, State, Territorial, and local taxation to the same extent as other similar property is taxed."

In *First Agricultural National Bank v. State Tax Commission*, 392 U.S. 339, 88 S.Ct. 2173, 20 L.Ed.2d 1138 (1968), the Court concluded that a similar statutory exemption rendered it unnecessary for the Court to reach the constitutional question of whether national banks are nontaxable federal instrumentalities. *Id.* at 341, 88 S.Ct. at 2175. Here, however, we are compelled to resolve the issued because the status of federal credit unions affects the analysis of a subse-

Therefore, if federal credit unions are federal instrumentalities, they are entitled to constitutional, as well as, statutory, immunity from state taxation.

Unfortunately, "there is no simple test for ascertaining whether an institution is so closely related to governmental activity as to become a tax-immune instrumentality." *Dep't of Employment v. United States*, 385 U.S. at 358–59, 87 S.Ct. at 467. The leading cases suggest that we examine the purpose for which federal credit unions were created, that we determine whether they continue to perform that function, and that we assess the federal government's control over and involvement with these organizations.

One significant factor in determining whether a particular entity is a federal instrumentality is whether it performs an important governmental function. *See Federal Land Bank v. Bismarck Lumber Co.*, 314 U.S. 95, 62 S.Ct. 1, 86 L.Ed. 65 (1941). During the depths of the Depression, two of the many problems plaguing the national economy were scarce credit and high interest rates. In order to deal with these problems, Congress authorized the establishment of federal credit unions. S.Rep. No. 555, 73d. Cong., 2d Sess. (1934). These cooperative associations were designed to encourage and enable average citizens to pool their resources. Through federal credit unions, therefore, the federal government makes credit available on liberal terms and at low rates of interest to middle-class Americans who, because they frequently lack adequate security, might otherwise have to turn to small loan financiers who can extort excessive interest rates in times of unexpected need.

In *Federal Land Bank v. Bismarck Lumber Co.*, the Supreme Court held that a virtually-identical fiscal function was indicative of tax-immune instrumentality status. The Court concluded that federal land banks were " 'instrumentalities, engaged in the performance of an important governmental function,' " 314 U.S. at 102, 62 S.Ct. at 5 (*quoting Federal Land Bank v. Priddy*, 295 U.S. 229, 231, 55 S.Ct. 705, 706, 79 L.Ed. 1408 (1935)), because "[t]hrough the land banks the federal government makes possible the extension of credit on liberal terms to farm borrowers." *Federal Land Bank v. Bismarck Lumber Co.*, 314 U.S. at 102, 62 S.Ct. at 5. Thus, federal credit unions, which provide a similar public service to a broader cross-section of the nation's citizens, also perform an important governmental function.

Michigan attempts to divert our attention from this fundamental fact by arguing that federal credit unions are no longer the small, simple thrift institutions that the sponsors of the Federal Credit Union Act intended to create. The state contends that, because these coopertives now offer a variety of increasingly-sophisticated financial services, essentially those also offered by private banks, federal credit unions do not deserve tax-immune instrumentality status. This argument is not persuasive because the conclusion does not necessarily follow from the premise. Merely because federal credit unions have added other financial services to attract more members and remain competitive with other types of financial institutions does not undermine the central fact: federal credit unions were designed to perform and continue to perform an important governmental function.

Federal credit unions also perform another, though somewhat less significant, federal function. Under 12 U.S.C. § 1767, federal credit unions are authorized to act as fiscal agents of the United States and as depositories of public money. Those functions have been recognized by the Supreme Court as important purposes of the federal government. *See Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 209–11, 41 S.Ct. 243, 248–49, 65 L.Ed. 577 (1921).

In addition to this interaction with the federal government, federal credit unions are extensively regulated under federal law. *See* 12 U.S.C. § 1752 *et seq.* Such sweeping regulatory supervision was found to be especially significant by the Supreme Court in *Smith v. Kansas City Title & Trust Co.* Admittedly, many other busi-

quent issue, the appropriate statute of limita-

tions.

nesses are subject to extensive federal regulation and yet are not granted tax-immune instrumentality status. Few such enterprises, however, have the following features: that they owe their very existence to an act of Congress; that their organization certificates must satisfy the requirements of a specific federal statute, 12 U.S.C. § 1754; that their scope and purpose is defined by federal law, 12 U.S.C. § 1752(1); and that they are subject to a regulatory agency with authority to suspend or revoke their charters or place them into involuntary liquidation, 12 U.S.C. § 1766(b)(1). *See Tabco Federal Credit Union v. Goldstein*, 1 Md.Tax Cases (CCH) ¶ 200–411 (Baltimore Cty.Cir.Ct., Md. June 22, 1964). Federal credit unions can be distinguished from other heavily-regulated enterprises in another important way. Whereas almost all private business will serve any customer, the "customers" of each federal credit union, its members, are expressly "limited to groups having a common bond of occupation or association, or to groups within a well-defined neighborhood, community, or rural district." 12 U.S.C. § 1759.

Finally, federal credit unions are different from many other highly-regulated businesses in that Congress has expressly exempted them from almost all forms of state and local taxation. 12 U.S.C. § 1768. This statutory exemption suggests that Congress believes that federal credit unions play such an important role in preserving the health of the national economy that they, like the federal government, must be free from state and local taxes which serve more narrow, parochial interests.

Because of the important governmental functions performed by federal credit unions, because of the extensive and unusual federal regulatory supervision of their creation and activities, and because of evidence that Congress believes they are federal instrumentalities, we hold that federal credit unions are federal instrumentalities. Accordingly, federal credit unions are immune under the Supremacy Clause, as well as under 12 U.S.C. § 1768, from state taxation.

This holding, however, does not dispose of this appeal. Michigan concedes that the sales tax is unconstitutional if the legal incidence of the tax falls upon the United States or its intrumentalities. A tax is not unconstitutional, however, if the legal incidence of the tax falls on a party who deals with the federal government and merely the economic burden of the tax is passed on to the United States by that party. For example, consistent with its constitutional obligations, a state may impose a tax on a federal contractor who subsequently recovers this tax payment by charging the United States a higher price. *James v. Dravo Contracting Co.*, 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155 (1937). Therefore, if the legal incidence of Michigan's sales tax falls on the retailer, as the state contends, then the law does not violate the Supremacy Clause. Thus, we must determine upon which party the legal incidence of the tax falls.

Contrary to Michigan's suggestion, this issue presents a federal question. In its brief, Michigan relies on decisions of the Michigan Supreme Court which have held that the legal incidence of the Michigan sales tax rests on the retailer. *See, e.g., Sims v. Firestone Tire & Rubber Co.*, 397 Mich. 469, 245 N.W.2d 13 (1976); *Federal Reserve Bank of Chicago v. Dep't of Revenue*, 339 Mich. 587, 64 N.W.2d 639 (1954). We need not follow those decisions, however. "Because the question here is whether the [state sales] tax affects federal immunity, it is clear that for this limited purpose we are not bound by the state court's characterization of the tax." *First Agricultural National Bank v. State Tax Commission*, 392 U.S. 339, 347, 88 S.Ct. 2173, 2177, 20 L.Ed.2d 1138 (1968). *See also Diamond National Corp. v. State Board of Equalization*, 425 U.S. 268, 96 S.Ct. 1530, 47 L.Ed.2d 780, *reh'g denied*, 425 U.S. 1000, 96 S.Ct. 2218, 48 L.Ed.2d 825 (1976).

Michigan's substantive argument that the incidence of the tax falls on the retailer is also without merit. The state rejects the characterization of the tax as a consumer sales tax. Rather, Michigan claims that it is a tax levied on retailers in return for the

privilege of conducting their businesses in Michigan. The state quotes Mich.Comp. Laws § 205.52, which provides, in part, that an annual tax shall be "collected from all persons engaged in the business of making sales at retail ... for the privilege of engaging in that business." Michigan also notes that the statute merely permits, but does not require, the seller to reimburse himself for his tax expense by passing on the financial burden to the buyer. Mich. Comp.Laws § 205.73.

Upon reviewing Michigan's sales tax statutes and the regulations which implement the tax, however, we conclude that state law clearly indicates the state legislature's intent that the tax be passed on the purchaser. In our view, therefore, this tax is a consumer sales tax the incidence of which falls on the purchaser.

In *First Agricultural National Bank v. Tax Commission*, 392 U.S. 339, 88 S.Ct. 2173, 20 L.Ed.2d 1138 (1968), the Supreme Court, reversing a decision of the Supreme Judicial Court of Massachusetts, held that the legal incidence of Massachusetts' sales tax fell on the purchaser, even though the retailer was the party required by law to pay the tax. The court reasoned that it was "indisputable that a sales tax which by its terms must be passed on to the purchaser imposes the legal incidence of the tax upon the purchases." *Id.* at 347, 88 S.Ct. at 2178. Therefore, the Court concluded, because "the clear wording of the statute [indicated] that the Massachusetts Legislature intended that this sales tax be passed on to the purchaser," the legal incidence of the tax fell on the purchaser. *Id.* at 348, 88 S.Ct. at 2178.

The Supreme Court has found a regulation implementing a tax to be convincing evidence of this controlling factor, the state legislature's intent. In *United States v. Mississippi Tax Commission*, 421 U.S. 599, 95 S.Ct. 1872, 44 L.Ed.2d 404 (1975),

the Court restated the test it had established in *First Agricultural Bank:* "where a state requires that its sales tax be passed on to the purchaser and collected by the vendor from him, this establishes as a matter of law that the legal incidence of the tax falls upon the purchaser." *Id.* at 608, 95 S.Ct. at 1878. The Court then found that one of the implementing regulations was adequate evidence of the legislature's intent which dictates the outcome of this issue.

We believe that Regulation 205.21(1) of the Michigan Department of Revenue, 1 Mich.Tax Rep. (CCH) ¶ 60–305, satisfies the Supreme Court's test. This regulation expressly requires the seller to pass the sales tax on to the purchaser: "A taxpayer *shall* include the sales tax as part of the selling price of tangible personal property." (emphasis added). This regulation also declares that a seller "may not advertise or hold out to the public in any manner, directly or indirectly, that the tax is not considered as an element in the price to the consumer."[2] The Supreme Court cited a similar statutory prohibition as support for its holding that the legal incidence of the Massachusetts sales tax fell upon the purchaser. *First Agricultural National Bank v. Tax Commission*, 392 U.S. at 347–48, 88 S.Ct. at 2177–78. The Michigan regulation, therefore, evidences the state's intent that the tax be passed on to the purchaser.

If this mandatory language were not sufficient to compel a retailer to pass along the tax in every transaction, the regulation also includes an economic inducement to do so.[3] Under Michigan's sales taxing scheme, a retailer must remit 4% of his gross proceeds from sales, including any sales tax collected. If this total gross sales figure includes sales tax, however, the retailer is allowed to deduct the sales tax collected from this figure prior to comput-

---

**2.** This prohibition is also contained in the statute. *See* Mich.Comp.Laws § 205.73.

**3.** The Supreme Court has suggested that economic realities may dictate upon which party the legal incidence of a tax falls. In *United States v. Tax Commission of Mississippi*, 421 U.S. at 610, n. 8, 95 S.Ct. at 1879, n. 8, the Court

stated that the legal incidence of the tax at issue fell on the purchasers because, even in the absence of a clear statement in the statute as to which party the legislature intended to tax, "economic realities compelled [the retailers] to pass on the economic burden of the markup."

ing the amount of tax which the retailer must remit to the state. But if the retailer does not collect sales tax from the purchaser, choosing instead to merely recoup this business expense by charging higher prices, he is not entitled to a deduction.[4] In order to maximize his after-tax profits, therefore, a retailer will collect the tax from the purchaser directly rather than absorb the cost as a business expense and pass on the tax indirectly.[5] In *United States v. California State Board of Equalization*, 650 F.2d 1127 (9th Cir.1981), *aff'd*, 456 U.S. 901, 102 S.Ct. 1744, 72 L.Ed. 2d 157 *reh'g denied*, 456 U.S. 985, 102 S.Ct. 2261, 72 L.Ed.2d 864 (1982), the court concluded that this kind of economic incentive for the seller to pass a sales tax directly on to a purchaser was sufficient to cause the legal incidence of the tax to be on the purchaser, even though the statute was facially neutral as to which party must pay the tax.

Here, the taxing scheme contains similar economic incentives, and language in the taxing statute's implementing regulations mandates that the tax be passed on to the purchaser. We hold that such legal and economic compulsion to pass the tax on to the purchaser is clearly sufficient to cause the legal incidence of the tax to be on the purchaser. Thus, because federal credit unions are federal instrumentalities upon which the legal incidence of Michigan's sales tax falls, this tax is unconstitutional.

■ We must now determine the extent of the recovery. The district court concluded that the statute of limitations contained in 28 U.S.C. 2415(a) applied to this action.[6] Therefore, the United States, on behalf of federal credit unions, was entitled to recover as damages all sales taxes improperly paid by these institutions during a six-year period prior to the commencement of this action.

Michigan also contests this aspect of the district court's opinion. The state maintains that the four-year limitation period provided in section 9 of the state's General Sales Tax Act, Mich.Comp.Laws § 205.59, should apply. This provision prevents a "taxpayer" from claiming a "refund of any amount paid to the [state] after the expiration of 4 years after the date of payment." Michigan argues that, because the United States is actually seeking a refund on be-

---

**4.** Regulation 205.21 provides the following instructions as to how the retailer should calculate the tax:

When the taxpayer's gross proceeds from sales include sales tax collected and when the gross proceeds, including the tax, are entered as gross sales on the tax return, the taxpayer may deduct from the gross sales the amount of tax included therein, if it is shown as a separate deduction on the taxpayer's return. Only under these conditions, however, may the taxpayer take such a deduction and then only in the following manner:

(a) Show the total gross sales, including sales tax, opposite item no. 1 on the return.

(b) Subtract from item no. 1 the amount of the nontaxable deductions, excluding the $50.00 statutory exemption, to arrive at the net sales.

(c) Divide the net sales as obtained by 104 to arrive at 1%, then multiply by 4 to obtain the amount of the tax included in the gross sales, which amount shall be shown as a separate deduction on the return and described as "sales tax included in gross sales."

**5.** The following example illustrates how a retailer maximizes his profits by collecting the tax from the purchasers as required by the regulation. For this purpose, we will compare two retailers, both with monthly sales of $10,000 and no nontaxable deductions, and we will use Michigan's sales tax rate of 4%.

The first retailer adds sales tax to the price of the goods at the time of the purchase. Accordingly, under the regulation, this retailer is entitled, in effect, to deduct the sales tax by dividing his gross proceeds, $10,000, by 104. The result, $96.15, is then multiplied by 4 to arrive at the 4% tax of $384.60. After remitting this amount to the state, the retailer is left with net proceeds of $9,615.40.

The second retailer, however, does not directly pass on the tax to the purchaser. Rather, this retailer absorbs the tax as a business expense, and he passes along this cost to his customers in the form of higher prices. Accordingly, this retailer is not entitled to the deduction under the Regulation 205.21. Therefore, he must remit to the state 4% of his gross sales of $10,000, or a tax of $400. The second retailer thus retains only $9,600, $15.40 less than the first retailer who passed the tax directly on to the purchasers.

**6.** Section 2415, entitled "Time for commencing actions brought by the United States," provides, in pertinent part, that "every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues...."

half of federal credit unions and is not really seeking to recover damages on its own behalf, this state statute of limitations should apply.

This argument is unavailing. Had we found that federal credit unions were not federal instrumentalities entitled to constitutional immunity from state taxation, this argument would have been attractive. Having held, however, that federal credit unions are federal instrumentalities, we believe that in this action the United States is seeking to recover on its own behalf. Therefore, because, under the doctrine of sovereign immunity, the United States, absent its own consent, it not subject to state statutes of limitations, *United States v. John Hancock Mutual Insurance Co.*, 364 U.S. 301, 308, 81 S.Ct. 1, 6, 5 L.Ed.2d 1 (1960), the state's four-year statute of limitations for refunds of sales taxes cannot apply. Thus, we need only determine whether this action is governed by the six-year limitation of § 2415(a) because it "is founded upon [a] contract express or implied in law or fact."

The cause of action which the United States is asserting here on behalf of the federal credit unions is to recover money mistakenly paid by these federal instrumentalities. These payments resulted in the unjust enrichment of the state of Michigan. Such an action for unjust enrichment is based on a quasi-contract, which is synonymous with a "contract implied in law." *United States v. Limbs*, 524 F.2d 799, 801–02 (9th Cir.1975). Moreover, as that court recognized, the legislative history of section 2415(a) clearly shows it was intended to govern such nonconsensual, quasi-contractual obligations as where someone receives money from the federal government to which he is not entitled. *Id.* at 802, n. 3. *See also United States v. DeKalb County*, 729 F.2d 738 (11th Cir.1984). Therefore, the district court correctly held that section 2415(a) applied to this action, and the district court properly ruled that the United States was entitled to recover all sales taxes paid by federal credit unions during the six years prior to the filing of the complaint.

Accordingly, the district court judgment is affirmed in all respects.

DAVID A. NELSON, Circuit Judge, concurring.

I agree that the judgment of the district court must be affirmed, but I write separately to note that because there is a statute (12 U.S.C. § 1768) granting federal credit unions exemption from taxes imposed by state taxing authorities, I think it is unnecessary to decide whether federal credit unions are "federal instrumentalities" that would enjoy exemption from state taxes even if the statute had never been enacted.

Whether or not the United States Constitution makes federally chartered credit unions exempt from state taxation *ex proprio vigore*, it does not seem to me that Michigan's four-year statute of limitations ought to apply here. The United States having brought this action at the request of the credit unions and for their benefit to recover taxes imposed illegally, I believe that the action is subject to the six-year limitations period prescribed by 28 U.S.C. § 2415 whether the illegality stems solely from 12 U.S.C. § 1768 or directly from the Constitution as well.

WELLFORD, Circuit Judge, concurring in part and dissenting in part:

I agree with Judge Martin that the district court properly exercised jurisdiction in this difficult case despite the Tax Injunction Act. I agree also that 12 U.S.C. § 1768 provides the federal credit unions, which are the real parties at interest, with a clear exemption from "all taxation now or hereafter imposed ... by any State, Territorial or local taxing authority except ... real property and any tangible personal property...." Congress had the power to grant that exemption to those then newly authorized federally chartered agencies. The wisdom of such a broad tax exemption from state and local sales taxes to these agencies that operate in local communities much like the myriad other tax-paying credit agencies that now exist may be open to question in light of the developments of the intervening fifty years since federal credit unions came into being. I doubt that

they any longer perform "an important governmental function," but it is for the Congress to decide whether the exemption should continue in force. I am also not prepared to emphasize any federal fiscal agency role of federal credit unions.

I join in Judge Martin's rationale dealing with the incidence of the Michigan sales tax upon instrumentalities such as federal credit unions. *See First Agricultural National Bank v. State Tax Commission*, 392 U.S. 339, 88 S.Ct. 2173, 20 L.Ed.2d 1138 (1968) and *United States v. Mississippi Tax Commission*, 421 U.S. 599, 95 S.Ct. 1872, 44 L.Ed.2d 404 (1975).

I dissent however with regard to the applicable statute of limitations period. I would not hold the exemption from state taxation to be related to or founded upon an implied contract or unjust enrichment theory or basis upon which recovery of state sales taxes mistakenly paid would be guided by 28 U.S.C. § 2415(a). I find no specific applicable limitation period fixed by federal law and would therefore hold this suit for recovery of state taxes to be subject to the four year limitation provided by § 9 of the Michigan General Sales Tax Act, Mich.Comp.Laws § 205.59. There was a voluntary payment of Michigan sales taxes here by the entities involved, and I would hold them, and the United States, bound by the reasonable Michigan limitations period of four years applicable to over-payment of these taxes.

### ON REHEARING

WELLFORD, Circuit Judge, Dissenting:

I respectfully dissent from the denial of the State of Michigan's petition for rehearing. I do not feel that the issue presented, whether the opinion filed July 8, 1988, should be deemed to be prospective only, has been fully considered by the court. I find it to be a serious and important question that should be addressed by the panel or by the court *en banc*. I adhere to my previous position that the Michigan four year statute of limitations should apply, and this becomes more important in light of the panel's refusal to consider the retrospective effect of our decision on the merits, one which undertook to decide a difficult question of first impression.