**In re Andrew J. TRUSKO and Mary Beth Trusko, Debtors.**

**Bankruptcy No. 96–1–5459–PM.**

United States Bankruptcy Court,
D. Maryland,
at Greenbelt.

Sept. 3, 1997.

Harris Ammerman, Washington, DC, for Debtors.

Loraine O'Hanlon, Alexandria, VA, for Northwest Federal CU.

Thomas Lackey, Bowie, MD, Chapter 13 Trustee.

### MEMORANDUM OF DECISION

(Trustee's Objection to Claims
of Northwest Federal
Credit Union)

PAUL MANNES, Chief Judge.

The Chapter 13 Trustee filed an objection to unsecured nonpriority claims of Northwest Federal Credit Union ("NWFCU") in the amounts of $4,308.90 and $12,400.98. The Trustee asserts that NWFCU's proofs of claim were untimely filed under Bankruptcy Rule 3002(c) in that they were filed "later than 90 days after the first date set for the meeting of creditors under § 341(a) of the Code" and therefore may not be allowed claims by virtue of § 502(b)(9) of the Bankruptcy Code. NWFCU argues that it is a "governmental unit" and as such may file a timely proof of claim at any time within 130 days after the date of the order for relief. The proofs of claim were filed within that 180–day period.

The single issue presented is whether federal credit unions ("FCU's") such as NWFCU are "governmental units" under 11 U.S.C. § 502(b)(9). If FCU's are governmental units, the claims of NWFCU were filed timely under Bankruptcy Rule 3002(c)(1).

The defined term "governmental unit" appears at various places in the Bankruptcy Code.[1] Most references to governmental units have no application to FCU's.

## RELEVANT STATUTES

**11 U.S.C. § 101. Definitions. In this title—**

(27) "governmental unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

**11 U.S.C. § 502. Allowance of claims or interests.**

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

\* \* \* \* \* \*

(9) Proof of such claim is not timely filed, except to the extent tardily filed as permitted under paragraph (1), (2), or (3) of section 726(a) of this title or under the Federal Rules of Bankruptcy Procedure, except that a claim of a governmental unit shall be timely filed if it is filed before 180 days after the date of the order for relief or such later time as the Federal Rules of Bankruptcy Procedure may provide.

Bankruptcy Rule 3002 provides:

**Filing Proof of Claim or Interest—**

(a) *Necessity for Filing.* An unsecured creditor or an equity security holder must file a proof of claim or interest in accordance with this rule for the claim or interest to be allowed, except as provided in Rules 1019(3), 3003, 3004, and 3005.

\* \* \* \* \* \*

(c) *Time for Filing.* In a chapter 7 liquidation, chapter 12 family farmer's debt adjustment, or chapter 13 individual's debt adjustment case, a proof of claim is timely filed if it is filed not later than 90 days after the first date set for the meeting of creditors called under § 341(a) of the Code, except as follows:

(1) A proof of claim filed by a governmental unit is timely filed if it is filed not later than 180 days after the date of the

---

1. *See* § 106, sovereign immunity; § 505(b), submission of tax returns and a request for a determination of tax liability to a governmental unit; § 505(c), assessment of tax by a governmental unit charged with responsibility for collection; § 522(f)(1)(A)(i), non-avoidability of a judicial lien securing a debt that is a family obligation made in connection with a determination by a governmental unit; § 523(a)(5), exception to discharge of a debt owed to a spouse, etc., in connection with a determination made by a governmental unit; § 525(a)(7) nondischargeability of a fine, penalty or forfeiture payable to and for the benefit of a governmental unit; § 525(a)(15), excluding from discharge certain obligations incurred in the course of a divorce or separation in connection with a determination made by a governmental unit; § 547(c)(7), exception from avoidance of certain bona fide payments of family obligations in connection with a determination made in accordance with state law by a governmental unit; § 1106(a)(6), requiring a Chapter 11 trustee to give information for years in which the debtor has not filed tax returns to the governmental unit with which such tax return was to be filed. But *see* § 523(a)(8), nondischargeability of educational benefit funded by governmental unit; § 525(a), protection against discriminatory treatment by a governmental unit as to denial, termination or discrimination with respect to employment; § 525(c)(1), a governmental unit operating a student loan program may not discriminate with respect to debtors.

order for relief. On motion of a governmental unit before the expiration of such period and for cause shown, the court may extend the time for filing of a claim by the governmental unit.

## DISCUSSION

### (A) Federal Credit Unions

Federal credit unions were established in 1934 with the enactment of the Federal Credit Union Act ("FCUA"). 12 U.S.C. §§ 1751 *et seq.* That statute defines a federal credit union as "a cooperative association organized in accordance with the provisions of this Act for the purpose of promoting thrift among its members and creating a source of credit for provident or productive purposes." *Id.* at § 1752. The Fourth Circuit provides the following insight to the intent of Congress in passing the Federal Credit Union Act.

Congress passed the Federal Credit Union Act of 1934 in response to the existence of usurious rates of interest and the widespread unavailability of credit for people of limited resources, conditions that hampered economic recovery. The act was accordingly designed "to make more available to people of small means credit for provident purposes." S.Rep. No. 583, 73d Cong., 2d Sess. 1 (1934). *See also,* H.R.Rep. No.2021, 73d Cong., 2d Sess. 1 (1934). The federal credit union system was therefore established as an alternative to an unacceptable credit structure, a structure that included banks. Thus, the general purposes of the Act, rather than indicating a desire to protect banks, instead suggest that competitive interests of banks were purposefully sacrificed by Congress to the interests of facilitating credit for people of limited personal means. *Branch Bank & Trust v. Nat. Credit Union Admin. Bd.,* 786 F.2d 621, 625–26 (C.A.4 1986), *cert. denied,* 479 U.S. 1063 [107 S.Ct. 948, 93 L.Ed.2d 997] (1987).

FCU's are the recipients of government charters, but are neither owned nor operated by the United States. They are not-for-profit cooperatives owned and operated by their members, most of whom share occupational, religious, or regional affiliation. They are independent financial institutions chartered by the United States. FCU's are allowed to operate for the most part tax free, thereby granting them the ability to offer competitive rates to their members. But, their activities are subject to regulations that include guidelines for membership. Section 1759 of the FCUA holds that "Federal credit union membership shall be limited to groups having a common bond of occupation or association, or to groups within a well-defined neighborhood community or rural district." Through the Federal Credit Union Act, home or work communities are encouraged to create their own savings and loan cooperatives, providing an alternative means of obtaining credit. FCU's are especially helpful for those persons with limited resources with limited access to main line financial institutions. Since their inception, FCU's have taken on a much broader scope of activity, becoming less distinguishable from other types of financial institutions. *U.S. v. Michigan,* 851 F.2d 803, 805–807 (C.A.6 1988).

In the 1980's, FCU's prospered, benefiting from their favored tax status, while many banks and savings institutions struggled.[2] Today, FCU members total more than 70 million. The growth of credit unions has stirred criticism from bankers that credit unions are stretching their membership well beyond the congressional mandate.

In an action filed in the United States District Court for the District of Columbia the American Bankers Association and several North Carolina banks sought to overturn the National Credit Union Administration's ("NCUA") approval of certain applications filed to expand the membership of the AT & T Family Federal Credit Union. The expansion added as potential members employees

---

**2.** In the 1980's, FCU's expanded beyond the local community. For example, in 1988 the American Association of Retired Persons (AARP) launched its own Federally chartered credit union. Requiring only $5 to join and a $250.00 minimum deposit to open a savings account, AARP's credit union provided favorable rate consumer banking for its 29 million members. Robert E. Taylor, *Retired Persons Association Launches Credit Union for Its 29 Million Members,* The Wall Street Journal, May 11, 1988, available in 1988 WL–WSJ 45834.

of various small businesses unaffiliated with the Credit Union's existing membership base. The District Court held in favor of the NCUA finding the common bond requirement ambiguous and that the NCUA's interpretation of the provision to mean "a credit union may have several groups, each with its own common bond is reasonable." On appeal, the United States Court of Appeals for the District of Columbia Circuit reversed, *First National Bank and Trust Co. v. National Credit Union Administration,* 90 F.3d 525 (D.C.Cir.1996). The Court of Appeals concluded that all of the members of a federal credit union must share a common bond.

This aspect of the struggle between banks and credit unions may be resolved by the Supreme Court. It granted *certiorari, National Credit Union Administration, Petitioner v. First National Bank and Trust Co.,* —— U.S. ——, 117 S.Ct. 1079, 137 L.Ed.2d 215 (1997).

### (B) Governmental Units

The legislative history of 11 U.S.C. § 101(27) is found in the House Report:

Paragraph [27] defines "governmental unit" in the broadest sense. The definition encompasses the United States, a State, Commonwealth, District, Territory, Municipality or foreign state, and a department, agency or instrumentality of any of those entities. "Department, agency, or instrumentality" does not include entities that owe their existence to State action such as the granting of a charter or a licence but that have no other connection with a State or local government or the Federal Government. The relationship must be an active one in which the department, agency, or instrumentality is actually carrying out some governmental function. H.Rep. No. 95–595, 95th Cong., 1st Session 311 (1977).

The First Circuit addressed the issue of whether FCU's are "governmental units" in *T I Fed. Credit Union v. DelBonis,* 72 F.3d 921 (C.A.1 1995). In *DelBonis,* the issue was whether a student loan issued by a FCU may qualify as an exception to discharge under 11 U.S.C. § 523(a)(8). 11 U.S.C. § 523(a)(8) provides:

§ 523. **Exceptions to discharge.**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

\*  \*  \*  \*  \*  \*

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a *governmental unit,* or made under any program funded in whole or in part by a *governmental unit* or nonprofit institution, or for any obligation to repay funds received as an educational benefit, scholarship or stipend, unless—

(A) such loan, benefit, scholarship, or stipend overpayment first became due more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents. (Emphasis added.)

In *DelBonis,* the District Court determined that FCU's qualify as "nonprofit institutions," thus educational loans made by FCU's are nondischargeable under 11 U.S.C. § 523(a)(8). *See also, In re Sinclair–Ganos,* 133 B.R. 382 (Bkrtcy. W.D. Mich.1991); *In re Roberts,* 149 B.R. 547 (D.C.Ill.1993). In affirming, the Court of Appeals did not decide whether or not FCU's are nonprofit organizations. Instead, the court held that FCU's are "governmental units" in its consideration of the exception to discharge provision of 11 U.S.C. § 523(a)(8).

The court found that in order for FCU's to fit within the definition of "governmental unit" they must be considered to operate as "instrumentalities" of the United States. *Id.* at 931. The court held that FCU's are federal "instrumentalities" in that they carry out important governmental functions by making credit available to millions of low income Americans to whom credit would not normally be available. Other courts have held likewise that FCU's are government instrumentalities.

In *United States v. State of Michigan,* the Sixth Circuit affirmed a district court judgment holding certain portions of the Michigan Sales Tax Act unconstitutional. Michigan had sought to levy sales taxes on FCU's purchases. The court held that the sales taxes were contrary to 12 U.S.C. § 1768 that expressly prohibited state taxation of credit unions, except for ad valorem taxation of real and personal property. In finding FCU's federal instrumentalities that perform governmental functions, the court noted:

> Michigan's jurisdictional challenge is also unavailing in light of our decision regarding the status of federal credit unions. The state contends that the district court erroneously concluded that federal credit unions are federal instrumentalities entitled to immunity from state taxation. We are not persuaded.

> \*    \*    \*    \*    \*    \*

Unfortunately, "there is no simple text for ascertaining whether an institution is so closely related to governmental activity as to become a tax-immune instrumentality." *Dep't of Employment v. United States,* 385 U.S. 355, 358–59, 87 S.Ct. 464, 467, 17 L.Ed.2d 414. The leading cases suggest that we examine the purpose for which federal credit unions were created, that we determine whether they continue to perform that function, and that we assess the federal government's control over and involvement with these organizations.

One significant factor in determining whether a particular entity is a federal instrumentality is whether it performs an important governmental function. *See Federal Land Bank v. Bismarck Lumber Co.,* 314 U.S. 95, 62 S.Ct. 1, 86 L.Ed. 65 (1941). During the depths of the Depression, two of the many problems plaguing the national economy were scarce credit and high interest rates. In order to deal with these problems, Congress authorized the establishment of federal credit unions. S.Rep. No. 555, 73d Cong., 2d Sess. (1934). These cooperative associations were designed to encourage and enable average citizens to pool their resources. Through federal credit unions, therefore, the federal government makes credit available on liberal terms and at low rates of interest to middle-class Americans who, because they frequently lack adequate security, might otherwise have to turn to small loan financiers who can extort excessive interest rates in times of unexpected need.

In *Federal Land Bank v. Bismarck Lumber Co.,* the Supreme Court held that a virtually-identical fiscal function was indicative of tax-immune instrumentality status. The Court concluded that federal land banks were " 'instrumentalities, engaged in the performance of an important governmental function,' " 314 U.S. at 102, 62 S.Ct. at 5 (*quoting Federal Land Bank v. Priddy,* 295 U.S. 229, 231, 55 S.Ct. 705, 706, 79 L.Ed. 1408 (1935)), because "[t]hrough the land banks the federal government makes possible the extension of credit on liberal terms to farm borrowers." *Federal Land Bank v. Bismarck Lumber Co.,* 314 U.S. at 102, 62 S.Ct. at 5. Thus, federal credit unions, which provide a similar public service to a broader cross-section of the nation's citizens, also perform an important governmental function.

*U.S. v. State of Michigan,* 851 F.2d 803, 805–06 (C.A.6 1988). *See also California Credit Union League v. City of Anaheim,* 95 F.3d 30 (C.A.9 1996); *United States v. Maine,* 524 F.Supp. 1056 (D.C.Me.1981).

Under one of its delegated powers, Congress created a system of federal credit unions making possible the extension of credit on reasonable terms ordinarily not available to wage earners. Therefore, the FCU's are governmental instrumentalities engaged in the performance of an important governmental function. Congress has protected these instrumentalities by the enactment of §§ 502(b)(9) and 523(a)(8) of the Bankruptcy Code. The objection will be overruled.